ATLAS REALTY COMPANY *v.* ROBERT G. GALT.

*Joint Adventure—Partnership—Action by Broker—Commissions on Sale—Employment by Agent— Evidence—Instructions.*

There is no real distinction between a joint adventure and what is termed a partnership for a single transaction, and to establish either it is essential to show that the parties have a joint proprietary interest, or that they are to share losses as well as profits, or that they have a joint control over the subject matter of the adventure or of the manner in which it is to be carried out.                                p. 590

That a corporation, having bought land in severalty, and erected garages thereon at its own expense, employed an individual to sell the garages, with no authority in him to fix the selling price or terms of sale, and he, though sharing in possible profits, to be liable for no losses and to run no risks, did not show him and the company to be engaged in a joint adventure.

p. 590

A prayer by defendant going to the right of plaintiff to recover necessarily concedes the truth of all evidence offered which tends to support plaintiff's contention, as well as all inferences of fact naturally and legitimately deducible therefrom.                      p. 591

In an action by a broker for commissions on the sale of property, against a corporation which owned the property sold, and against an individual employed by the corporation to sell it under an agreement to divide profits, *held* that the facts in evidence permitted the inference that the corporation authorized such individual to employ plaintiff to sell the property, agreeing either to pay the latter's commissions itself, or to pay them jointly with such individual.                      pp. 591-593

In an action against two defendants, a prayer by one of them, not referring to the pleadings, which asked for the direction of a verdict in its favor for lack of evidence to support a verdict against it, should be refused if there is any evidence legally sufficient to warrant a verdict against that defendant in any form of action.                      p. 594

In an action by a broker against two defendants for commissions on the sale of property, a prayer by one defendant that the verdict must be for it unless the jury find either that it employed plaintiff as its agent to obtain a purchaser, or ratified and confirmed such employment, *held* properly refused as going to a recovery and yet ignoring such part of the evidence as would permit a recovery against both defendants as joint promisors.                      pp. 594, 595

The Court of Appeals could not review, on defendant's appeal, the refusal of plaintiff's first prayer and the grant of his second prayer, when the only exception was to the "granting" of plaintiff's first prayer.                      pp. 595, 596

# 588      ATLAS REALTY CO. *v.* GALT.

In an action by a broker for commissions on the sale of property, against the corporate owner and an individual employed by the latter to sell the property, a prayer submitted by such individual, asking a verdict in his favor if the jury found that plaintiff, before he was employed, knew that the property to be sold belonged to the corporation, and agreed to look to it for his commission, was properly granted.          pp. 596, 597

In such action, a fragment of a letter, enclosed by the individual defendant to plaintiff, giving a description of the property, as to which there was no dispute, was properly admitted, there being evidence that such defendant was authorized to employ plaintiff on behalf of the corporation, the appellant.  p. 597

Where a question asked a witness was not objected to until after it was answered, and there was no motion to strike out the answer, *held* that there was no question presented for consideration by the Court of Appeals.          p. 597

*Decided November 2nd, 1927.*

Appeal from the Baltimore City Court (OWENS, J.).

Action by Robert G. Galt against the Atlas Realty Company and James W. Miller. From a judgment for plaintiff, the first named defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*J. Britain Winter,* with whom was *Edward A. Strauff* on the brief, for the appellant.

*Henry H. Dinneen,* with whom was *Harry M. Benzinger* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Atlas Realty Company is a Maryland corporation engaged in buying, selling, renting and developing real estate. James W. Miller is a builder who occasionally specu-

lates in real estate. Robert G. Galt is a licensed real estate broker. The Atlas Realty Company, hereafter referred to as the Atlas Company, induced by Miller, bought through him a tract of land, improved it by the erection of a number of garages thereon, employed Miller to sell the garages, and agreed to pay him for his services in selling them one-half the net profit realized from the transaction. He in turn employed Galt and, through Galt's efforts, they were sold to the Linthicum Realty Company for $16,650; and approximately $1,600 was paid to Miller, in commissions, that being about one-half the net profits of the transaction. Galt, as soon as the sale was made, demanded that Miller pay him his commission for effecting it, and upon his failure to make such payment he sued him and the Atlas Realty Company jointly in assumpsit in the Baltimore City Court, on the theory that he had been employed jointly by them to make the sale. The case was tried in ordinary course, a verdict returned, and a judgment entered against both defendants. From that judgment the Atlas Realty Company appealed.

The plaintiff's contention is that he was employed by the Atlas Realty Company and Miller to sell the property, while the company's defence is that Miller alone was its agent, that it never employed Galt, and that Miller had no authority to bind it by any contract of employment he may have made with Galt, and that it never ratified any contract of employment which Miller may have made with him. The record contains four exceptions, two relating to questions of evidence, and two to the court's rulings on the prayers.

The first and most important question presented by the record is whether there is in the case any evidence legally sufficient to support the plaintiff's contention. He apparently relies to some extent upon the theory that Miller and the company were engaged in a joint adventure, but there is no evidence in the case legally sufficient to support that contention. In a sense they were engaged in a joint adventure, because each of them expected to profit through the sale of the same property, but in that sense nearly every principal and agent, where a sale of real estate is sold by

the agent, are engaged in a joint adventure. But something more than mere profit sharing is required to establish the fact that both were engaged in a joint adventure in the technical legal sense of that phrase. *Nat. Surely Co. v. Winslow,* 143 Minn. 66; 33 C. J. 847. While a joint adventure may be distinguished from a partnership, nevertheless they are both so much alike that it is often very difficult to differentiate them. And to establish either it is necessary to do more than show that the persons said to be so associated are to share in the profits of a transaction. *Clark v. Muir,* 298 Ill. 548; *Manker v. Tough,* 79 Kan. 46; 33 C. J. 844. But it is essential to show that they have a joint proprietary interest, or that they are to share losses as well as profits, or that they have a joint control over the subject matter of the adventure or of the manner in which it is to be carried out. In fine, there seems to be no "real distinction between a joint adventure, and what is termed a partnership for a single transaction." *Rowley on Partnership,* par. 975.

Applying these principles to the established facts of this case, nothing can be found to support the proposition that the Atlas Realty Company and Miller were engaged in a joint adventure in the sale of the garage property to which we have referred. The Atlas Company bought and owned the land in severalty, it built and paid for the garages, and Miller had no interest of any kind either in the land or the garages. He was employed to sell them, but he had no authority to fix the selling price, or the terms of sale, he was liable for no losses, and he ran no risk, and, so far as he was concerned, there was neither venture nor risk. If a profit was realized he was to share in it. If a loss resulted the Atlas Company alone was to bear it.

But even though Miller and the Atlas Realty Company were not engaged in a joint adventure, it was still possible for them to act jointly in employing Galt to sell the garages, and jointly or severally to undertake to pay him for his services. And as has been said, the main question in the case is whether the evidence is legally sufficient to support the hypothesis that they did, and that question is presented

by the first prayer of the Atlas Realty Company, which was offered at the close of the plaintiff's case, and again at the close of the whole case, and is the subject of the second and fourth exceptions. That prayer necessarily conceded the truth of all evidence offered in the case which tended to support the plaintiff's contention, as well as all inferences of fact naturally and legitimately deducible therefrom. *Kelly v. Huber Baking Co.,* 145 Md. 321, 333.

Certain facts in the case not disputed by either side we will treat as established. They are: (1) That the Atlas Realty Company owned the garages and the ground on which they stand, and that Miller had no legal interest in them, or in the stock or securities of the company. (2) That the garage property was sold to the Linthicum Realty Company for $16,650, of which $2,655.79 was taken care of by the conveyance of two houses, $970 by a mortgage, and the balance in cash. (3) That the Atlas Realty Company employed Miller to sell the garage property, and agreed to pay him one-half the net profit arising from the sale. (4) That Edward A. Strauff is the vice-president of the Atlas Realty Company and represented it in negotiating the sale and fixing the terms thereof. (5) That the Atlas Realty Company actually paid Miller one-half of the profits of the sale, which was the amount remaining after deducting from the selling price the price paid by the Atlas Company for the land and the cost of the garages, with certain minor adjustments for interest, taxes, and incidental expenses. (6) That Miller is not a licensed real estate broker. (7) That Galt was a licensed real estate broker.

In addition to these facts, there is some evidence of others, which, while disputed, must also, for the purposes of the prayer under consideration, be taken as true. Stated in narrative form they are as follows:

Miller, who is a builder and contractor, who also deals in real estate, as agent, offered the Atlas Company a lot of ground on Taylor Street in Baltimore City, and suggested to it that if it would buy the lot it could be improved by the erection of garages thereon and sold at a profit. The com-

pany bought the land, Miller procured bids for the construction of the garages, procured a permit for their erection, and superintended their construction, and although he was paid nothing directly for that work, was told by the company that if he sold the garages he would be paid one-half the profits of the entire transaction. In pursuance of that authority he prepared, with the approval of Strauff, a letter to a number of brokers, in which he stated that he had the garages for sale, at $550 each, and he approached Robert G. Galt, the appellee, told him of the garages, and offered to pay him the usual commissions if he sold them. At that time, Galt says, he knew nothing of the Atlas Company at all, but assumed that Miller owned the property, and did not know that the Atlas Company owned it until he was sent to Strauff by Miller, a short time before the contract with the Linthicum Company was closed. Miller, on the other hand, says that Galt knew from the beginning that the Atlas Company owned the property, and he further said that he told Galt that the Atlas Company would pay the commissions, and he also testified that "the Atlas Company was going to pay the commission," and that "Strauff spoke to Galt in his own office. I was along with Galt when these matters were discussed, the different propositions from Linthicum and the other people; I took him up to Strauff and if I did not go along sometimes he would go himself. When I first went down with this contract, Strauff knew about Galt having acted for them. I showed these copies to Strauff before they were sent out. He thought it was a wonderful idea. I knew what the regular commissions were, and I should imagine a lawyer ought to know. The object of building the garages was to sell them. I supplied the idea, and he supplied the money, and I superintended the building. The idea was, when I got them built, they were to be sold and I was to share in the profits. I was going to try and sell them; after the commission came out, the cream of the profit was to be split, fifty to me and fifty to him. In pursuance of this arrangement I talked to Galt and asked him to find a purchaser among one hundred others and Galt produced Linthicum." Miller also testified that

"the Atlas Realty Company was going to pay the commission"; that the Atlas Realty Company, through Strauff, knew, before the sale had actually been consummated, that it had been made by Galt, and that Galt expected to be paid commissions for the sale.

Galt, in the course of his testimony, after referring to his employment by Miller and his negotiations with the Linthicum Company, said: "I told Mr. Miller what was happening and he said, 'You had better go over and see Mr. Ed. Strauff, because he is to pay part of the commission.' Mr. Strauff is a lawyer at 2 E. Lexington Street. I told this to Mr. Strauff and he gave me a very consoling thought in return. He said: 'Mr. Galt, if you make that deal you ought to have your commission.' "

From these facts two inferences are permissible, either of which, aside from the pleadings, would have supported a finding for the plaintiff. One, that the Atlas Company authorized Miller to employ Galt to sell the garages, and agreed to pay his commission, the other that the Atlas Company authorized Miller to employ Galt to sell its property and agreed to pay the commission jointly with Miller.

If the jury believed Miller, as they had the right to do, they could have found that Miller, with the knowledge and approval of Strauff, who is conceded to have acted in the transaction as general agent for the Atlas Company, sent out a general letter to brokers offering the property for sale, and offering to pay to the broker effecting the sale the usual commissions, and that "the Atlas Company was going to pay the commission." They could have further found that, before the sale was actually consummated, Galt had told Strauff that Miller had told him, that he, Strauff, was to pay part of the commission for making the sale, and that Strauff had then said, "If you make that deal you ought to have your commission," and that Strauff, knowing that Galt had made the sale, and that he expected to be paid at least part of his commission by the Atlas Company, consummated the sale, and accepted the fruit of Galt's labor. While that evidence cannot be said to be entirely satisfactory, nevertheless it is

some evidence tending to prove that Galt was employed by Miller on behalf of the Atlas Company to sell the property. *Re Statement No.* 1, *Agency, A. L. I.,* par. 136. It is true that the declaration in the case sets out a joint undertaking on the part of the defendants, and proof of a several undertaking would not, had that objection been made in the trial court, have been sufficient to justify a recovery against both defendants. But the prayer under consideration was not offered on behalf of both defendants, but asked the court to direct a verdict for the Atlas Company alone, on the ground that there was in the case no evidence legally sufficient to entitle the plaintiff to a verdict against it. The prayer did not refer to the pleadings, and if in the case there was any evidence legally sufficient to warrant a recovery against that company in any form of action, the prayer should have been, as it was, refused. *Rosenkovitz v. United Rwys. Co.,* 108 Md. 312.

But in addition to that there was some evidence from which it may have been inferred that the Atlas Company did agree with Miller to pay Galt's commissions jointly with him. Miller's statement, that the Atlas Company was "going to pay the commission" is not conclusively inconsistent with his further statement that "after the commission came out, the cream of the profit was to be split, fifty to me and fifty to him." Because under such an arrangement, while the actual payment would have been made by the Atlas Company, in point of fact one-half of the commission would necessarily have been deducted from the compensation payable to Miller, and actually he and the Atlas Company would have paid the commission jointly. And taken in connection with Galt's statement that he had told Strauff before the transaction was closed that he, Galt, had been informed by Miller that Strauff was to pay part of the commissions, with the fact that Strauff, so far from repudiating that suggestion, had said that, if he made the "deal," he ought to have his commissions, and with the further fact that, after he had told Galt that, the Atlas Company consummated the sale, that evidence was sufficient to take the case to the

jury on the theory of an undertaking to pay Galt his commissions jointly assumed by both defendants. It is true that if that statement had been made by Strauff without knowledge that Galt expected the Atlas Company to pay part of the commission, it would have been without any legal effect, but, as we have pointed out, that is not this case.

It was argued that Miller, as the agent of the Atlas Company, had no authority to bind his principal to pay the commission of a sub-agent employed by him, unless such employment was expressly authorized or subsequently adopted and ratified by it. Authority is not needed to support that proposition as a legal abstraction, but it is not applicable to this case. The question here was not whether Galt was employed as a sub-agent by an agent of the Atlas Company, but whether there was any evidence that he was employed as an agent by that company itself. It was conceded that it did not employ him directly, but, as has been said, there was evidence that with knowledge of the material facts it had not only ratified his employment by Miller, but had authorized it.

In our opinion, therefore, the prayer under consideration was properly refused. *Hoen v. Kidd,* 130 Md. 696.

By the Atlas Company's second prayer, which was refused, the court was asked to instruct the jury that "unless it finds by a preponderance of the evidence that it did employ the plaintiff as its agent to obtain a purchaser of the property described in the evidence for it, then and in that event its verdict must be for the defendant, the Atlas Realty Company of Baltimore City, unless it further finds that with full knowledge that the plaintiff claimed to be employed by it and entitled to compensation from it for services in securing a purchaser for such property, it did ratify and confirm such employment." The abstract legal proposition embodied in that prayer is apparently unexceptionable. Some question was raised as to the use of the word "full," in qualifying the word "knowledge," but that objection is, we feel, too tenuous and refined for serious consideration. The rule is that, to bind a principal for the unauthorized act of another as his

agent, it must appear that he ratified it "with full and complete knowledge of all the material facts connected with the transaction to which it relates." *Mechem on Agency,* par. 395; *Re Statement Agency, A. L. I.,* par. 120. But the prayer was properly refused, because it goes to a recovery, and wholly ignores that part of the evidence which would have permitted a recovery against both defendants as joint promisors. As offered, the jury could well have inferred from it that, unless they found that the Atlas Company alone employed Galt, the plaintiff was not entitled to recover against it. But such an inference would have been bad in law and in fact, because if it appeared that both defendants jointly undertook to pay Galt commissions, he would have been entitled to recover against both of them, and while such a meaning may not have been intended, yet, as the language of the prayer would have permitted it, it may have misled the jury and was, for that reason, properly refused.

Upon the record we cannot consider the rulings of the court with respect to the plaintiff's prayers. The court granted the plaintiff's second prayer and refused its first, but the only exception found in the record concerning those rulings was taken to the granting of the plaintiff's first prayer, which, as we have said, was refused. Appellant, however, objects to the granting of a prayer, at the request of Miller, which in effect told the jury that even though Galt was the procuring cause of the sale of the garage property, yet if before he was authorized to sell it he was informed by Miller that the Atlas Company was the owner of it, and that he, Galt, would have to look to it for his commission, and that he agreed to do so, and that in fact the Atlas Company was the owner of the property, that their verdict should be for the defendant Miller. That seems to be a reasonably clear and accurate statement of the law applicable to the facts of the case, and so far as we can see is free from error. It did not ask for a verdict in favor of the plaintiff, as appellant suggests, but for a verdict in favor of Miller, if the jury found that Galt, before he was employed, knew that the property which he was to sell was owned by the Atlas Com-

pany and agreed to look to it for his commission. Moreover, the prayer seems to have been quite harmless, and certainly could not have injured the appellant, for the jury found their verdict against Miller as well as against it.

The remaining exceptions deal with rulings on evidence. Galt in the course of his testimony stated that he received in a letter from Miller. a fragment of another letter containing data of the property offered for sale, and that fragment was offered in evidence. Objection was made that it was inadmissible because it was incomplete, and because no transaction between Galt and Miller was admissible to affect the Atlas Company. But there seems to be no force in either objection. The fragment was a mere description of the subject matter of the contract, which was not in dispute, and there was, as has been said, some evidence that Miller was authorized to employ Galt, and naturally what he did in employing him was relevant and material.

Miller in the course of his testimony said that he had told Galt that full commissions were to be paid by the Atlas Company. After he made that statement, there was a dialogue between the court and counsel, and at the conclusion of it counsel for appellant stated that he was "objecting to it on behalf of the Atlas Realty Company." But it does not appear what it was to which he objected. He had not objected to the question until after it had been answered, and made no motion to strike out the answer. Consequently the exception submits no question which this Court can consider.

Finding no error in the record, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*