[Civil No. 4382.   Filed February 23, 1943.]

[134 Pac. (2d) 167.]

VICTOR B. ESTRELLA, Appellant, v. CAESAR R. SUAREZ and LEONILO LARRIVA, Appellees.

Mr. Carlos G. Robles, for Appellant.

Mr. Richard H. Chambers, for Appellees.

Messrs. Cusick & Lyons, of Counsel.

McALISTER, C. J.—This is an action by Caesar R. Suarez and Leonilo Larriva against Victor B. Estrella to recover damages for breach of a contract, and from a judgment for the plaintiffs, the defendant appeals. The parties will be referred to as they were in the trial court.

The facts material to a determination of the appeal are substantially as follows: Prior to December 10, 1937, the plaintiffs and the defendants, residents of Nogales, Arizona, had been engaged independently in the business of hauling fish with headquarters at No-

gales. The defendant, Estrella, had been transporting fish from the west coast of Mexico to Nogales and then on, mainly to the larger cities of California. The plaintiffs, Larriva and Suarez, had been engaged in the same business on both sides of the international boundary, though Suarez had been operating principally in the United States.

Some time before December 10, 1937, however, fishing unions or "cooperativas" among the fishermen on the west coast of Mexico were organized, seemingly at the direction of the Mexican government, and most of the fishermen in that section, who were residents of Mexico, had become members of one of these unions, the three principal ones being the "Cardenas," the "Rudolfo Elias Calles" and the "Yaqui." Each cooperativa had a selling agent in the United States at Nogales, Arizona, the defendant, Estrella, being the representative of the Cardenas, the plaintiff, Larriva, of the Elias Calles, and one Henry Bartning of the Yaqui. These sales agents, it appears, were able to buy, or obtain for transportation from Nogales to points in Arizona, California, New Mexico and Texas, a part of the fish of their respective cooperativas, though there were some 15 or 16 other persons in Nogales engaged in the business of hauling for hire west-coast-of-Mexico fish, or buying it outright, transporting it to destination and reselling it. The testimony of plaintiffs discloses, however, that after the formation of the cooperativas, which no one other than a citizen of Mexico could join, it became more difficult for persons not residents of that country to buy fish for resale or obtain it for hauling, so that Suarez and Larriva, American citizens, were able to procure but little, and by December, 1937, had gradually reached the point where they did almost no fish business at all. Plaintiffs state in their brief that they were required to withdraw from operating in Mexico because of legislation denying non-

residents certain privileges of doing business there, but defendant denies that there is any testimony to this effect and we are cited by plaintiffs to none. However, Estrella being a citizen of that country and the representative of the Cardenas Cooperativa, and also of the Rudolfo Elias Calles, after its agency had been surrendered to him by Larriva, was able to buy fish there and also to obtain it to haul. So the situation in which these three parties found themselves, in December, 1937, led to the formation of the following agreement:

"THIS INDENTURE made this 10th day of December, 1937, between LEONILO LARRIVA, VICTOR ESTRELLA AND CAESAR R. SUAREZ, WITNESSETH:

"1. The said Leonilo Larriva, Victor Estrella and Caesar R. Suarez, for and in consideration of the mutual promises and covenants herein expressed, do promise and agree to become and remain partners in the business of transporting fish and other sea foods for the term of five years from the date of signing of this agreement, if they so long live.

"2. The name by which this partnership shall be known is 'Sea Foods Transportation Company.'

"3. The parties hereto promise that they will at all times diligently employ themselves in the business of the partnership and carry on the same for the greatest mutual advantage.

"4. Neither party shall, either directly or indirectly, engage in any business except the business of the partnership without the consent of the other parties to this agreement.

"5. The assets of the said partnership shall consist of seven trucks, of which each member shall contribute as follows: Victor Estrella three (3) trucks; Caesar R. Suarez, two (2) trucks; Leonilo Larriva, two (2) trucks.

"6. The business of the partnership is that of transporting fish and other sea foods from Nogales and Sasabe, Arizona, through the State of Arizona, to points in the States of California, New Mexico, and Texas, and any other such points as business will warrant. Each partner will operate the trucks which he contrib-

uted to the partnership, and all of such trucks shall be loaded in rotation as they return from the point of delivery.

"7. The proceeds of this partnership shall be divided as follows: Each partner shall derive as his share the amount or amounts which he has contributed to the partnership through the earnings of the trucks he contributed. All losses, if any, shall be borne by the said individual contributor of his trucks. The contributor of each truck will bear the cost of insurance and the other expenses attendant to the operation of the same, and in this respect each partner shall punctually pay his debts and indemnify the other partners and the capital and property of the partnership against the same and all expenses on account thereof.

"8. Neither party shall, without the previous consent in writing of the others, enter into any bond, or become bail or surety for any person, or do anything whereby the capital or property of the partnership may be taken in execution.

"9. All books of account and the necessary and proper entries therein to be made of purchases, receipts, payments, engagements, transactions and property of the partnership shall be kept by Caesar R. Suarez, and shall be kept available for the inspection at any time of any of the parties hereto. As special remuneration for such service Caesar R. Suarez shall receive $25.00 a month to be paid by the parties hereto in proportion to the amount of income received by each from his business for the month preceding. All other mutual, incidental expenses incurred by the partnership shall be assessed in the same proportion.

"10. In the event of accident or other unforeseen contingency, whereby it becomes impossible for the partner then acting in the business of the partnership to make delivery of his load, it shall become the duty of the truck next in turn to go and pick up the load, and the said partner shall then receive compensation in proportion to the mileage then left to the point of delivery. In the event of a small delivery or load, it shall become the duty of the truck next in turn to make delivery of such load, unless it be otherwise agreed.

"11. In the event that business should so justify, the partnership may add other and more trucks from time

to time. In such event, the parties hereto will each bear one-third of the cost and shall receive each one-third of the profits derived through use of such additional truck or trucks.

"12. All trucks working or used in the partnership business shall comply with the regulations of both interstate and intrastate commerce, insofar as the various laws of the United States Government and the various state governments in which the partners shall do business demand. Any partner whose truck infringes any of the above mentioned laws shall be liable to the partnership for the penalties and fines thereby incurred.

"13. All controversies among the members of this partnership shall be settled according to the opinion of the majority, and the other partner shall abide therewith.

"14. All firm proceeds shall be placed and kept in a bank which the said parties hereto will hereafter denominate. No partner alone has the right or privilege to check on the partnership account, but two of the parties hereto together may make such checks.

"15. Any party to this agreement who for cause or causes now unknown shall lawfully separate himself from the partnership, shall and does bind himself not to engage in the same business of transporting fish in the States of Arizona, California, New Mexico, and Texas during the remainder of the term of this agreement.

"16. On the expiration of this partnership, each partner shall withdraw and is entitled to the trucks, or other equipment, which he has contributed.

"IN WITNESS WHEREOF the parties hereto have hereunto set their hands the day and year first above written.

"Leonilo Larriva
"V. B. Estrella
"C. R. Suarez"

(Affidavit follows)

This agreement was drawn up in Phoenix by an attorney of that city and executed the day the three partners went there hoping to obtain from the corporation commission of this state, if they could, an exclusive

franchise for the transportation of fish from Nogales and Sasabe, Arizona, to points in Arizona, California, New Mexico and Texas. The agreement contained no reference to an exclusive franchise, however, and the record does not disclose that they even applied for one, but the partners did ask the corporation commission, in the name of the "Sea Foods Transportation Company" for a certificate of convenience and necessity permitting them to haul fish for hire from Nogales and Sasabe, Arizona, to points in Arizona, California, New Mexico and Texas, and this was granted some two or three days later.

Upon returning to Nogales from this Phoenix trip the partners mutually agreed that they would not observe paragraph 4 of the agreement, but that each of them could continue to carry on the business he had been following prior to the execution of the agreement and still carry out its other provisions. Estrella was permitted to run his fish business south of the border and his ice business at Pitiquito, Sonora, Mexico, Suarez his commission business in Nogales, Arizona, and Larriva his employment with the highway department of Santa Cruz County. The trucks contributed to the partnership by the partners, or at least part of them, were to be driven by employees of their owners.

According to the testimony of Larriva, it was the understanding of the three partners that Estrella would attend to the business in Mexico, that is, arrange for fish for the three of them to haul within the United States, and the plaintiffs would attend principally to the transportation on the American side of the line, though the three trucks of Estrella were to be included also in the operations on this side, the contract providing that the trucks of each of the three partners were to be loaded "in rotation as they return from the point of delivery."

The agreement was lived up to for about 30 days, or until January 10, 1938, when Estrella advised Suarez and Larriva that he was not going to observe it any longer. Up to that time, or during these 30 days, Estrella had loaded one truck and Suarez four, but when Larriva's time to load came around on January 10, 1938, he was informed by Estrella, notwithstanding there was an ample supply of fish, that he could not have any to haul. From that time on, however, Suarez and Larriva continued to ask Estrella for fish to transport, but he refused to furnish them any.

From the foregoing and many other facts introduced at the trial, the court found that two or three days after the parties to the action executed the contract of December 10, 1937, they mutually agreed, that while they would carry out the purposes of the agreement each could continue the line of work he was carrying on prior to the execution of the contract; that on or about January 10, 1938, Estrella, without the consent of plaintiffs, breached and terminated the contract, though from December 10, 1937, Suarez and Larriva performed all the things required of them under the agreement, or stood ready, willing and able to do so; that on or about December 10, 1937, the parties orally agreed that they would attempt to secure from the corporation commission for their venture, under the name "Sea Foods Transportation Company," an exclusive franchise for the transportation of fish originating in the Gulf of California, from Nogales and Sasabe, Arizona, into and through Arizona to points in California, New Mexico and Texas, but they were advised by the government authorities they could not legally obtain such a franchise or permit, and they thereupon abandoned their attempt to do so before January 10, 1938; that after January 10, 1938, the plaintiffs were not able to obtain any substantial amount of fish tonnage to haul for hire, though the plaintiff Suarez, after persistent

attempts, did succeed in securing some, and that Larriva, if he had made an effort to do so, might have obtained as much as Suarez; that the plaintiffs have suffered damage by reason of the breach of the defendant, Victor B. Estrella.

From these findings the court concluded as a matter of law that the contract dated December 10, 1937, constituted a valid and binding agreement between the parties; that it did not make the parties to it partners but did make them joint adventurers, for the purposes set forth therein; that the contract was not void for indefiniteness and uncertainty, but was supported by adequate consideration in the mutual undertaking of the parties; that the breach of defendant, which occurred before the default of plaintiffs, excused the latter from any further performance; that the plaintiffs have suffered, or will suffer, by the end of the five year period the contract was to continue, damages by reason of defendant's breach in the aggregate sum of $1,250, for which the plaintiffs are jointly entitled to judgment, and judgment for this amount was entered for the plaintiffs.

The first assignment is that the court erred in finding that the agreement made the parties joint adventurers. Even though it is denominated a partnership agreement, it is not contended by either side that it created a partnership because it is clear from its provisions that the parties did not intend that they should share in the profits or losses of the undertaking, but that each so-called partner should receive as his share of the profits the amount made by him in the operation of his own trucks, the size of which was left entirely to his own discretion, and that if losses were suffered by one of them it was wholly his loss, there being no provision for contribution by the others.

It would seem to be true also, as contended by defendant, that the agreement did not have the

effect of making the parties joint adventurers, since, under all the authorities, sharing in the profits is necessary to create a joint adventure which is merely a "partnership for a single transaction." *Atlas Realty Co.* v. *Galt,* 153 Md. 586, 139 Atl. 285, 286. In 30 Am. Jur. 682, par. 12, appears this statement: "An agreement, express or implied, for the sharing of profits is essential to the creation of a joint adventure." Under many authorities sharing in losses is also required. *Gottlieb Bros., Inc.* v. *Culbertson's,* 152 Wash. 205, 277 Pac. 447; *Dempsey-Kearns Theatrical & Motion Picture Enterprises* v. *Pantages,* 91 Cal. App. 677, 267 Pac. 550; *Atlas Realty Co.* v. *Galt, supra.* Some courts hold sharing the losses is not essential. *Simpson* v. *Richmond Worsted Spinning Co.,* 128 Me. 22, 145 Atl. 250. The fact however, that the agreement created neither a partnership nor a joint adventure does not necessarily mean that it was not a binding contract. If it obligated the parties to it to the performance of mutual, reciprocal obligations and one of the parties breached it by refusing to perform the acts it imposed upon him and his refusal resulted in damage to them, he would be liable for the breach.

It occurs to us, however, that in the light of the terms of the agreement and the purpose the parties had in view in entering into it, the contention that it is unilateral in character is well founded. The testimony in behalf of plaintiffs is that after the formation of the fish cooperativas, which only Mexican citizens could join, they, being American citizens, were unable to procure fish to haul in any substantial quantity, but that Estrella, a citizen of Mexico and an agent at Nogales, Arizona, of one of the cooperativas, could secure it in almost any amount he desired. So, in order that fish to transport in paying quantities might be obtained by the three of them, they entered into the agreement upon the theory, according to plaintiffs, that Estrella could

and would procure the fish for the three of them to haul. In other words, Estrella would rustle the fish and turn four-sevenths of it over to Larriva and Suarez to transport and no part of the receipts for hauling would go to him. It is very clear that under this arrangement, even if the three trucks contributed by Estrella, and the two each contributed by Larriva and Suarez, were loaded in rotation, the obligations were not reciprocal but unilateral only. It was merely a gratuity on the part of Estrella to procure the fish and turn over more than one-half of it to Larriva and Suarez to haul solely for their own benefit.

The defendant testified, upon the other hand, that he agreed to enter into the contract with Larriva and Suarez upon the statement by them that they then had, or were going to get, an exclusive franchise to transport fish and other sea foods, from Nogales, Arizona, where some 15 or 16 other persons were engaged in the same business, to Arizona, California and other points; that after operating about a month he told Larriva and Suarez that in view of the fact they had not obtained the franchise they promised him they would and that others were still hauling fish from Nogales, it would be better to consider the contract at an end.

It does not appear whether Estrella knew when he signed the agreement that an exclusive permit could not be obtained, but whether he did or not it is clear from the record that it was the promise that they already had, or would obtain one, that first interested him in becoming a party to a contract with them in the business of hauling fish. Transporting west-coast-of-Mexico fish from Nogales, Arizona, to points in Arizona and elsewhere would undoubtedly have been profitable to Estrella, as well as to the plaintiffs, if it could have been confined to these three persons through an exclusive permit. But how, under the explanation of Larriva and Suarez, as to the manner in which the business

was to be carried on, it could have been anything more than a constant sacrifice or gratuity on the part of Estrella, it is impossible to understand. No consideration whatever passed from Larriva or Suarez to Estrella for procuring this business and turning such a large proportion of it over to them to haul rather than to handle it himself for his own profit. The fact that plaintiffs were to look after the business of the company on this side of the international boundary, while defendant attended to that south of the line, does not change the status of the parties in this respect, because under the arrangement there was nothing plaintiffs did or could have done at Nogales or Sasabe, Arizona, that could have reciprocated defendant in any degree for the service he was rendering them. Clearly the agreement was a *nudum pactum* and, therefore, unenforcible.

The defendant contends further that none of the parties had a certificate of convenience and necessity as provided by law, and, therefore, had no right to use the highways of the state for transporting fish for hire. The record discloses that they applied to the corporation commission in the name of the "Sea Foods Transportation Company" for such a certificate, instead of a permit under section 66–507, Arizona Code 1939, and that a franchise or permit was issued to that company. The parties filed with their application for the certificate a copy of the so-called partnership agreement throughout whose provisions the parties were referred to as partners. The agreement was evidently regarded by the corporation commission as establishing a partnership or it would doubtless have refused to issue the permit, but inasmuch as it is held upon investigation that it created neither a partnership, nor even a joint adventure, and there is no contention that it was a corporation, the permit issued to the "Sea Foods Transportation Company" was illegal and gave

the parties who signed the agreement no right whatever to use the highways of the state for carrying freight or passengers. Each of the parties to the agreement was in the business of transporting fish for himself and did not have the right to use the highways of the state to carry freight or passengers for hire until he obtained from the corporation commission, in his own name, a permit to do so. One permit in the name of the "Sea Foods Transportation Company," which was not in the business of hauling fish for hire, gave the three parties to the agreement no right to use the highways of the state for transporting freight or passengers for themselves individually.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment for the defendant.

ROSS and STANFORD, JJ., concur.