445 P.2d 452

Lala TAFOYA; Lala Tafoya, Guardian of the Estates of Tommy Tafoya and Terry Tafoya, minors; and James Tafoya, Appellants,

v.

Ruby Bernice TRISLER, Appellee.

No. 1 CA-CIV 694.

Court of Appeals of Arizona.

Sept. 25, 1968.

Rehearing Denied Oct. 25, 1968.

Review Denied Dec. 17, 1968.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellants.

Christy, Kleinman, Hoyt & Fuller, by William G. Christy, Phoenix, for appellee.

MOLLOY, Judge.

The sole question raised on this appeal is whether there was sufficient evidence to resist a motion for a directed verdict on the issue of whether a joint enterprise existed between two defendants in the conducting of a custom harvesting business.

Mrs. Bernice Trisler and Doyle W. Ellison are the two persons whom the plaintiffs contend were operating this business as a joint enterprise at the time one of its employees drove a grainhauling truck in such manner as to cause injuries to them. The defendant Ellison testified during the trial that he was the owner of the business which was employing this particular employee and disclaimed any joint enterprise or partnership arrangement with the defendant Mrs. Trisler. At the conclusion of

all of the evidence, the trial court directed a verdict in favor of Mrs. Trisler and it is from a judgment entered on such a direction that this appeal is taken.

Evaluating the evidence most favorably to support the conclusion of a joint enterprise, Nieman v. Jacobs, 87 Ariz. 44, 347 P.2d 702 (1959), the facts are as follows. Mrs. Trisler and her husband, Walter Trisler, had been operating a "custom" grain harvesting and hauling business for several years. Mrs. Trisler had been active in the business along with her husband. In March of 1964, marital problems between the Trislers culminated in a property settlement agreement under the terms of which Mrs. Trisler agreed to pay to Mr. Trisler $50,000 in exchange for a transfer to her of the grain harvesting and hauling business, together with all of its equipment and accounts receivable, subject to its indebtednesses, which she assumed. Included in the transfer was the home of the parties which was used as the office from which this business was conducted.

In April of 1964, Mrs. Trisler entered into an oral agreement with Ellison to sell the business to him for $30,000, payable at the rate of $6,000 per year plus interest. The evidence is unclear as to whether, in addition to this $30,000, Ellison was to pay off $30,000 in notes which were owed by Mrs. Trisler at two banks. There was no down payment made on this purchase. A written memorandum of the agreement was prepared, but never signed by the parties. Both Ellison and Mrs. Trisler acknowledged the substantial accuracy of this document insofar as reflecting their agreement and the same was admitted in evidence.

Though both Ellison and Mrs. Trisler referred to their agreement as a "sale" of the business, there are various special provisions not ordinarily found in a sales agreement. For instance, it was agreed by them that all moneys from this business would be placed in a bank account in the name of Ellison, and that the moneys could be withdrawn only by checks signed by both Ellison and Mrs. Trisler. This arrangement was to continue until Ellison had fully paid for the business. Further, it was agreed that, until the purchase price had been paid in full, Mrs. Trisler was " * * * to draw one-fourth of all profits from combine and truck operation," in addition to any amounts paid on the purchase price. It was agreed that, until the purchase price was paid in full, Ellison was to "draw" from the business only the sum of $100 per week while he was engaged in overhauling the equipment and $150 per week during the harvesting season.

Ellison had but one year's experience in this type of a business, having worked for the Trislers during this time, and had no financial resources or credit standing with which to start a business. Mrs. Trisler, through her banking connections, arranged for a loan of $5,000, which moneys were placed in the Ellison bank account subject to the joint signatures. The loan was obtained on a note upon which Mrs. Trisler was the maker, and Ellison the guarantor, and secured by assignment of funds in a savings account of Mrs. Trisler's.

Ellison commenced overhauling equipment in May and harvesting operations commenced soon thereafter. Mrs. Trisler helped keep the business records for Ellison and Mr. Trisler was employed as a foreman or superintendent at $150 per week. Despite the property settlement and a subsequent divorce in August of 1964, the Trislers "never separated" and Mrs. Trisler continued to "check on" Mr. Trisler, whom she considered to be a "sick man." The check-stub records of this business, admitted in evidence, are partly in Mrs. Trisler's handwriting. They indicate that Ellison drew the amounts agreed upon during this harvesting season. On several of the check stubs, it is indicated that this amount was for "combine labor."

Donald Trisler and Barbara Trisler, a son and daughter of the Trislers, worked in this business during the harvesting season. The business was conducted out of the home of the Trislers and the telephone number used by the business was the Trisler's

home phone. The truck involved in the subject accident had the Trisler name painted on its side together with this telephone number. The titles to the equipment used by Ellison remained in the name of Mr. Trisler until after the accident which is the subject of the case at bar, which occurred on June 14, 1964.

The employee who was driving the truck which was in this accident testified that he was employed only by Ellison and taking orders only from him. However, his testimony in this regard is impeached by a written statement signed by him three days after the accident in which he stated:

"I take orders from three (3) people Mr. Trisler, Mrs. Ruby Bernice Trisler [appellee] and Doyle Ellison. On Sunday, June 14, 1964, I was in the employee [sic] of the above three (3) named people and was performing work for them at their request and was to be paid for these services as part of my regular work."

This employee's paychecks, as were all other expenditures made by this business during the time with which we are concerned, were signed by both Ellison and Mrs. Trisler. Mrs. Trisler received $4,340 as one fourth of the net profits of this business during the 1964 harvesting season, as well as substantial payments upon the purchase price. Insofar as the customers of this business were concerned, as of June, 1964, none of them were informed that there had been a transfer of the business to Ellison and they were allowed to assume that Mr. Trisler was still the owner of the business.

Our Supreme Court has stated that a joint enterprise is a " 'partnership for a single transaction.' " Estrella v. Suarez, 60 Ariz. 187, 196, 134 P.2d 167, 170 (1943). Our Supreme Court has also said:

" * * * a joint adventure is a special combination of two or more persons where in some special venture a profit is jointly sought, Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 109 P.2d 845, and that under all the authorities a share in the profits is necessary to create

such a venture, Estrella v. Suarez, 60 Ariz. 187, 134 P.2d 167."

Arizona Public Service Company v. Lamb, 84 Ariz. 314, 317, 327 P.2d 998, 1000 (1958).

Under our Uniform Partnership Act, a partnership is defined as " * * * an association of two or more persons to carry on as co-owners a business for profit." A.R.S. § 29–206, subsec. A. Supplementary statutory law reads:

"The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(a) As a debt by installments or otherwise.

* * * * * *

"(d) As interest on a loan, though the amount of payment vary with the profits of the business.

"(e) As the consideration for the sale of a good will of a business or other property by installments or otherwise."

A.R.S. § 29–207, subsec. 4.

Our Supreme Court gives the "elements" of a joint enterprise as:

" * * * (1) a contract, (2) a common purpose, (3) a community of interest, and (4) an equal right of control. * * * Joint adventures are applicable to both business and social purposes. They are in the nature of a partnership. Each of the parties thereto is the agent of the others. It follows that each of the others is likewise a principal so that the act of one is the act of all."

West v. Soto, 85 Ariz. 255, 261, 336 P.2d 153, 157 (1959).

Additional language of our Supreme Court pertains to the situation when a tort claim is made by a third person against an alleged joint venture:

" * * * that where there is a question of a joint adventure, each case must be decided upon its own facts, and unless the court can say as a matter of law that the parties were engaged in a joint adven-

ture, the question must be submitted as a question of fact to the jury. Of course, the converse is true, that unless the court can say as a matter of law that the parties were not engaged in a joint adventure, it must submit the question to the jury.

\* \* \* \* \* \*

"The intent of the contracting parties to form a partnership is always an essential element of a partnership relation *as between the parties themselves*, but as to third parties, the relation will be determined from the facts rather than the conclusions of the co-partners as to the nature of their business relationship. May v. Sexton, 68 Ariz. 358, 206 P.2d 573, 575; cf. Eastlick v. Hayward Lumber & Investment Co., 33 Ariz. 242, 263 P. 936. The informal agreement under which the appellees put their plan into operation did not specifically include any understanding that Rima [trailer park owner] was to be simply the agent of Vinson [owner of a trailer in which the plaintiff's deceaseds were asphyxiated] in renting the trailer and collecting the rent. The jury was entitled to consider the actual facts of what occurred and to draw from that the inference as to the nature of the business relationship. It certainly was not bound by the conclusions which Rima seeks to place on the facts."

Mercer v. Vinson, 85 Ariz. 280, 286–287, 336 P.2d 854, 858–859 (1959).

■ We believe the quoted pronouncements of our Supreme Court control the disposition of this action. There can be no doubt, in view of the express language of our statute, that the mere fact that profits are received as the purchase price for the assets of a business does not necessarily constitute the payee a joint venturer. But, here we have a considerable variation of such an arrangement. Here, the profits received are not applied towards the purchase price itself, but were received in addition to the purchase price, which bore interest in addition to these profits.

At one time in our legal history, the mere fact that profits were received was conclu-sive of a partnership relationship. 40 Am. Jur. Partnership § 46, at 160; 68 C.J.S. Partnership § 29, at 447. Over the years, case law exceptions were developed to this rigid rule, which exceptions have been formalized in the Uniform Partnership Act, the pertinent provisions of which have been quoted in this opinion, supra. Nevertheless, an agreement to receive profits immediately causes an examination to ascertain whether one of the recognized exceptions to the rule pertains.

■ The following quote appears to be good law:

"It is also generally held that the right of control or any voice in the control of a business enterprise should be regarded as an incident of proprietorship, and its presence or absence may be of great weight in determining whether or not a particular relation constitutes a partnership."

Holliday v. Taylor, 249 S.W.2d 941, 944 (Tex.Civ.App.1952).

■ Vicarious liability in tort is imposed upon the master primarily because of his right to control the servant. 2 Harper and James, The Law of Torts § 26.3, at 1366–1369 (1956); Prosser, The Law of Torts §§ 68–69, at 470–472 (3d ed. 1964). We see many indicia in this record that Mrs. Trisler had a right of control over this business under her agreement with Ellison. At the time of this accident, Ellison had paid nothing down on the purchase of this business. What interest he had in the business was not formalized by any written document. All of the financing had been provided by Mrs. Trisler and she was more experienced in the business than he. Her home was being used as the office for the business and her home phone was the business telephone. She was helping keep the books of the business and had joint control, along with Ellison, of all expenditures of his business. The essence of ownership is the right to control. A fact-finder may very well conclude, from all the related circumstances here, that Mrs. Trisler's control was substantially as great as Ellison's

and, if so, it is our view that she must be held to be a co-owner of this business for profit.

Judgment reversed.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.