[Civil No. 3752.   Filed January 4, 1937.]

[63 Pac. (2d) 639.]

SALT RIVER VALLEY WATER USERS' ASSO-
CIATION, a Corporation, Appellant, v. MERLE
CORNUM, Appellee.

2

Messrs. Sloan, McKesson & Scott, for Appellant.

Mr. G. W. Shute, Mr. Fred O. Wilson, Mr. Chet W. Williams, for Appellee.

LOCKWOOD, J.— ■ This is an appeal by Salt River Valley Water Users' Association, a corporation, hereinafter called the company, from a judgment against it and in favor of Merle Cornum, hereinafter called the plaintiff. The evidence taken in the strongest manner in favor of plaintiff, as under the oft-repeated rule of this court we must take it, presents a somewhat unusual situation, and we summarize it, so far as is necessary for a decision of the case, as follows:

On May 14, 1933, about 10:30 in the morning, plaintiff, a strong and healthy young man just under his majority, had been standing near the southeast corner of the intersection of Lateral 16 and Avenue J, two public highways in the Salt River Valley, talking with his uncle. He then turned away and began walking in an easterly direction along the south side of the pavement on Avenue J. This avenue is a paved public highway running east and west and had been previously designated by the proper legal authorities, pursuant to section 1600, Rev. Code 1928, as a boulevard or through highway. Under the law applying to such highways, all vehicles being operated on the intersecting highway known as Lateral 16, which runs north and south, were required to come to a full stop before entering or crossing Avenue J, and proper stop signs had theretofore been erected at the north and south entrances of Avenue J from Lateral 16, warning all traffic on the latter to come to a stop before entering Avenue J. At some time prior to the date aforesaid the company, as a part of its electrical system and acting under a permit from the board of supervisors of Maricopa county, had erected and maintained near the southeast corner of the intersection of the two highways, and at a distance of about 10 feet from the south edge of the paved portion of Avenue J, an iron pole supporting a power line. This pole was braced or supported by a guy wire, one end of which was fastened near the top of the pole and the other end to an eye bolt firmly anchored in the ground some 60 feet east of the pole, and about 8 feet south of the paved portion of Avenue J. The end of the guy wire passed through the eye bolt, and was reversed and twisted around the main cable and held firmly in place by a clamp. In doing this work, the company had left the end of the guy wire sticking some several inches beyond the clamp, so that it presented a stiff and rod-

like end which was unguarded and unprotected. While plaintiff was walking along the south edge of the pavement, as aforesaid, a Chevrolet automobile owned by W. E. Choisser, which was being driven at a high rate of speed in an easterly direction along Avenue J, entered the intersection of the two highways. At the same time a Whippet sedan automobile owned by Charlie Vaughn was traveling in a southerly direction on Lateral 16 and entered the intersection without coming to a stop, as required by law, and collided with the Choisser car. After such collision and as a result thereof, the latter car was rendered unmanageable and its driver lost control of it so that it continued across the intersection in a southeasterly direction towards plaintiff. The latter heard the crash and looked around in time to see the Choisser car apparently coming straight at him. In order to avoid the imminent danger, he turned and ran towards the guy wire intending to take refuge behind it, and reached it at the point where the wire projected from the clamp, when the projecting end caught his clothing and prevented him from proceeding further until the Choisser car struck him. As a result of the impact, his leg was badly mangled, whether by the car, the sharp wire, or both being uncertain, and eventually it was necessary to remove the leg. He brought this action against the company, Choisser, and Vaughn as joint tort-feasors, alleging that defendants were guilty of concurrent negligence, the company in allowing the projecting wire to be in the condition in which it was, Choisser in driving his car at a dangerous and excessive rate of speed on Avenue J, and Vaughn in entering Avenue J without coming to a stop at the intersection.

The case was tried to a jury, which at the first trial returned a verdict in favor of plaintiff against Choisser and the company for $8,800, no verdict being returned either against or in favor of Vaughn. The

company moved for a new trial, which was granted, and at the second trial a verdict was returned against it for $5,000. Choisser did not ask for a new trial nor appeal from the verdict and judgment against him.

There are two questions only raised by the assignments of error on this appeal, which are necessary for us to consider. The first is, Does the evidence in the case show concurrent negligence on the part of the company and Choisser? and the second, Was the action of the company in maintaining its guy wire in the above described condition a proximate cause of the accident? We will consider these questions in their order.

The general rule in this jurisdiction in regard to concurrent and separate acts of negligence and liability therefor is laid down in the case of *White* v. *Arizona Eastern R. R. Co.*, 26 Ariz. 590, 229 Pac. 101. In that case there was a collision between a truck driven by the intestate and a train operated by the railroad company, and it was claimed there was joint liability on the part of the intestate's employers, a stage line company, and the railroad company. The negligence of the employer was alleged to have been in providing a truck for the intestate to drive which was faulty in its braking system, and in requiring the intestate to work so long and continuously that he could not properly operate the truck with the defective brakes. The negligence of the defendant railroad company was alleged to have been a failure on the part of the engineer of the train which collided with the truck to give a proper signal at the crossing where the collision occurred, and the maintaining of an obstruction near said crossing which prevented approaching vehicles from seeing trains on the track until it was too late to stop. In that case, as in this, the objection was raised that there was no joint nor concurrent negligence, and that the defendants were

improperly joined in the action. In the opinion, we said as follows:

"We think beyond question the complaint shows the accident in which deceased met his death was the result of two separate, distinct, and independent causes, one being a faulty brake and a debilitated physical and mental condition, due to overwork and lack of sleep, for which his employers were responsible, and the other the negligence of the railroad company. These causes not only have different sources, but do not coincide in time or place. The act or omission of the 'stage line' defendants, as set forth in the complaint, antedates the accident some time. Their act consisted in turning over to a wornout and exhausted employee the truck without sufficient brakes at a time prior to the collision, and in which act the other defendant (the railroad company) had and took no part, and could by no principle of law we are familiar with be responsible for. Likewise the 'stage line' defendants could not be charged with the negligence of the railroad company in permitting its right of way at crossing to become obstructed by brush or trees, and in its failure to ring bell or adequately warn at crossing. These acts and omissions of duty were personal to the defendant railroad company and no one else. The negligences laid at the door of these separate defendants as the bases of a claim for damages sustained in the accident described were not current or joint, but separate, distinct, and independent of each other.

"Because unconnected, unrelated acts of different persons or corporations accidently or fortuitously may have influenced an injury and damage, it does not necessarily follow that such persons or corporations are joint tort-feasors. If A. beats C., and B., while C. is wounded and worn from such beating, acting independently of A., administers another beating to C., from which he dies, A. and B. are not joint tort-feasors and jointly liable for C's. death, although C. might not have died had B. not beaten him. There must exist some community of purpose or wrong or fault to give rise to joint liability. This we think is the settled rule. To constitute a joint tort the wrong

must be joint. A tort may be committed by one person or by several, but the tort is always single. The general rule on this point we think is very well stated in *Dickson* v. *Yates,* 194 Iowa, 910, 917, 188 N. W. 948, loc. cit. 951 [27 A. L. R. 533], wherein it is said:

" 'Only when two or more persons act in concert of action to commit a common tort are they joint tort-feasors. If the tort of two or more parties is several when committed, it does not become joint by reason of the union of the consequences of the several torts in producing an injury. . . . Although joint tort-feasors are jointly and severally liable, it is hard to conceive a tort "at once joint and separate." *Ramsey* v. *Cedar Rapids & M. Ry. Co. et al.,* 135 Iowa, 329, 112 N. W. 798. When two or more parties act each for himself in producing a result injurious to the plaintiff, they are not jointly liable. . . . There must be concurrent action, a co-operation or concert in the accomplishment by the wrongdoers of the particular wrong in order to make them jointly liable. If each person acts independently of the other the fact that they acted simultaneously is not sufficient to establish joint liability. . . . ' "

■■ We also discussed certain exceptions to the rule, pointing out the reasons for the exceptions. In all of these exceptions, it appeared that the alleged negligences of the different defendants coincided in time, place, and character and, as a matter of fact, the cases to which we referred in the opinion were all cases involving the negligent *operation* of colliding instrumentalities, and not cases where one alleged negligence was the *condition* of a vehicle, while the other defect was in the *operation* of another vehicle. The alleged negligence of the defendant company was not in active conduct, but in the creating and maintaining of a certain passive condition. Its negligence occurred, if it existed at all, days, perhaps months or years before the negligence of the defendant Choisser, for it is clear from the evidence the projecting wire must have been there for a considerable period of

time. The alleged negligent acts did not correspond in time, neither did they correspond in character. Further, it is practically universally held that where one negligence consists merely in the creating and maintaining of a passive condition which is innocuous except through and by active negligence on the part of a third person, the two are not concurrent. *Steenbock* v. *Omaha Country Club,* 110 Neb. 794, 195 N. W. 117; *Stone* v. *Boston & A. R. Co.,* 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; *Comes* v. *Dabney,* 79 Kan. 820, 102 Pac. 488; *New England Fuel etc. Co.* v. *Boston,* (D. C.) 257 Fed. 778.

We are of the opinion that the court should have sustained the company's plea in abatement on the ground that there was no concurrent negligence, and the case must necessarily be reversed on that ground. ▆▆▆ If this were the only error, the plaintiff should be given the option of deciding against which defendant he would proceed, as was done in *White* v. *Arizona Eastern R. R. Co., supra,* but since the issue of proximate cause has been properly raised on the present appeal, and since our conclusion on that point will necessarily be determinative of whether, under the circumstances, plaintiff has any right of action against the company, we think it better to state that conclusion now than to send the case back on an opinion which might lead to another appeal and reversal. We consider then whether or not there is evidence in the record which would justify a jury in finding that the alleged negligence of the company was a proximate cause of the very severe injury which the plaintiff undoubtedly sustained, for if it was not he has no cause of action against the company.

▆▆▆ Proximate cause has been defined by this court, in *City of Douglas* v. *Burden,* 24 Ariz. 95, 206 Pac. 1085, as follows:

"The proximate cause of an event is that which, in a natural and continuous sequence unbroken by any new, independent cause, produces the event, and without which the event would not have occurred. This connection is broken when a new or subsequent cause intervenes so as to become the sole factor producing the injurious result to the exclusion of the negligence of the first wrongdoer in its operation as an efficient factor therein, but it is not broken by the addition of another factor or cause which merely contributes to the result without superseding the efficient operation of the first cause."

And this definition is substantially the same as that prevailing in most jurisdictions.

▋▋ It is claimed by the company that the negligent and, indeed, criminal act of the driver of the Choisser car set up by plaintiff in his complaint and necessarily found by the jury when it rendered a verdict against Choisser, to wit, driving at a high, excessive, and dangerous rate of speed, was the primary and only proximate cause of plaintiff's injury, and that its negligence was, at the most, a remote cause which merely contributed to the injury. That the conduct of the driver of the Choisser car was a proximate cause of the accident is not disputed by plaintiff; indeed, he could not dispute it, for he sued Choisser and recovered judgment against him, which judgment has not been set aside nor appealed from. But he claims the negligence of the company was also a proximate cause. It is undoubtedly true that there may be more than one proximate cause of a tort, but it is very unusual to find two proximate causes which are not concurrent. The general principle of law involved is tersely but correctly stated in the case of *Herr* v. *Lebanon,* 149 Pa. 222, 24 Atl. 207, 208, 34 Am. St. Rep. 603, 16 L. R. A. 106:

"If two distinct causes are operating at the same time to produce a given result, which might be pro-

duced by either, they are 'concurrent' causes. They run together, as the word signifies, to the same end. But if two distinct causes are successive and unrelated in their operation, they cannot be concurring. One of them must then be the proximate, and the other the remote, cause. When they stand in this relation to each other and the result to be considered, the law regards the proximate as the efficient and responsible cause, and disregards the remote.''

The same principle is set up in *Bruggeman* v. *City of York,* 259 Pac. 94, 102 Atl. 415; *Missouri Pac. R. R. Co.* v. *Columbia,* 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399; *Seaboard Air Line R. Co.* v. *Watson,* 94 Fla. 571, 113 So. 716. Nor do we know of any well-considered case which holds to the contrary.

Since we have found the negligence of the company and that of the driver of the Choisser car were not and could not be concurrent in their nature, one of them must presumably have been a proximate and the other a remote cause of the injury. Undoubtedly, the negligence of the driver of the car, being the cause which produced the sequence of events which led up to the unfortunate injury of plaintiff, was the primary and must, therefore, have been also the only proximate cause thereof, unless the negligence of the company was a new and subsequent cause which intervened so as to become the sole factor producing the injurious result, to the exclusion of the negligence of the first wrongdoer in its operation as an efficient factor therein. It is obvious that the static condition of the guy wire was not and could not have been such a cause.

There is, however, one exception to the rule that two nonconcurrent acts of negligence cannot *both* be proximate causes of an injury. Where the author of a negligent static condition should reasonably have anticipated that the primary and active negligence which started the sequence which produced the injury might occur and that it would act together

with the static condition and produce injury, even though the two acts of negligence are not concurrent, they are both proximate causes of the injury and an action may be brought against either negligent person, though not against them jointly. The rule and the method of determining the nature and probable sequence is well set forth in *Seith* v. *Commonwealth Elec. Co.*, 241 Ill. 252, 89 N. E. 425, 427, 132 Am. St. Rep. 204, 24 L. R A. (N. S.) 978, as follows:

''To constitute proximate cause the injury must be the natural and probable consequence of the negligence, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence. It is not necessary that the person guilty of a negligent act or omission might have foreseen the precise form of the injury; but, when it occurs, it must appear that it was a natural and probable consequence of his negligence. If the negligence does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the two are not concurrent and the existence of the condition is not the proximate cause of the injury. Where the intervening cause is set in operation by the original negligence, such negligence is still the proximate cause, and where the circumstances are such that the injurious consequences might have been foreseen as likely to result from the first negligent act or omission, the act of the third person will not excuse the first wrongdoer. *When the act of a third person intervenes, which is not a consequence of the first wrongful act or omission, and which could not have been foreseen by the exercise of reasonable diligence, and without which the injurious consequence could not have happened, the first act or omission is not the proximate cause of the injury.* The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and, if so, the connection is not broken; but if the act of the third

person, which is the immediate cause of the injury, is such as in the exercise of reasonable diligence would not be anticipated, and the third person is not under the control of the one guilty of the first act or omission, the connection is broken, and the first act or omission is not the proximate cause of the injury." (Italics ours.)

It will be seen that the thing which should have been anticipated is not whether in some manner a person might be injured by reason of the passive condition, but *the act of the third person,* which is the primary cause of the injury. A situation where, under the rule, the liability exists is well shown in *City of Douglas* v. *Burden, supra.* There it appears that a hole or excavation extended into the street some 7 or 8 feet. As the plaintiff was driving along the highway in a normal manner, an automobile driven by another person cut diagonally across his path, and in order to avoid the apparent danger of collision, the plaintiff was forced to travel along the south side of the road where the excavation entered it. In so doing, the wheel of his car was brought to the edge of the excavation and, the earth giving way, his auto fell into the hole, and he was injured thereby. We said:

"Although the happening of the precise event by which plaintiff was thrown into the ditch could not have been foreseen, the appellant—in the language of the authorities expressing the implication arising from the legal duty to use care—was bound to know that some such injury was likely to occur and to guard against the event which did happen. Certainly the probability of some such occurrence would at once have suggested itself to any person who had thought about the subject at all."

In the present case, the act which started the sequence which brought about the injury of plaintiff was a collision between two cars, both of which were violating the criminal law of the state, and one of

which, by reason thereof, was thrown violently upon the passageway where plaintiff was walking. Even so, according to his own complaint, he was not suddenly and without warning thrown against the guy wire, but, knowing it was there, intentionally and deliberately fled towards it, intending to use it as a place of refuge from the oncoming car. Of course, it is not necessary that a defendant should have anticipated the precise primary act which started the sequence. All that is necessary is that he should have reasonably anticipated some act of the same general character. Defendant was using the highway for its guy wire legally, and was only required to anticipate that others would use it in the customary manner. It may perhaps be said that collisions between automobiles on the highway are so customary that defendant company was required to anticipate such events as being an ordinary incident of highway use. Even admitting this to be true, the particular type of collision and the sequence of events following it were so unusual that we think no reasonable person could have anticipated they might occur and that the condition of the guy wire would or could combine therewith to produce plaintiff's injury.

■■■ But there is another reason why the negligence of defendant company cannot be considered as a proximate cause of the accident. It is the well-established rule of law that a defendant's negligence is too remote to constitute proximate cause of an injury when an independent *illegal* act of a third person, which could not be reasonably foreseen and without which such injury would not have been sustained, intervenes. We have had this question before us in the case of *Crandall* v. *Consolidated Tel. etc. Co.,* 14 Ariz. 322, 127 Pac. 994, 997, and therein we said:

"The criminal act of a third party can never be the natural sequence in the link of circumstances leading

up to an injury, but, when such act is present, it must be considered as the efficient proximate cause of the subsequent injury, and the law will not go beyond it for a proximate cause. 29 Cyc. 501, 502.''

The same question was considered in the famous case of *The Lusitania*, (D. C.) 251 Fed. 715, 732. As is well known, the Lusitania had been torpedoed, without warning, by a German submarine and many of its passengers were drowned. Numerous suits were begun against the Cunard Steamship Company, the owner of the vessel, and the company brought the usual proceeding in admiralty in the federal court to determine the extent of its liability. The ground of the various suits was the alleged negligence of the captain of the Lusitania in not following the advices which he had received from the British admiralty in regard to the course which he should take, it being claimed that such action was a proximate cause of the loss of the ship. The court stated as follows:

''It is an elementary principle of law that, even if a person is negligent, recovery cannot be had, unless the negligence is the proximate cause of the loss or damage.

''There is another rule, settled by ample authority, viz., that, even if negligence is shown, it cannot be the proximate cause of the loss or damage, if an independent illegal act of a third party intervenes to cause the loss. [Citing cases.]''

It was pointed out in a lengthy and exhaustive opinion that the act of the commander of the German submarine in torpedoing the ship without first putting the persons on board in a place of safety was a violation of international law, and that the captain of the ship could not have been expected to anticipate that such law would be violated. It was held that the violation of law was the proximate cause of the loss of the ship and that even were the captain negligent, since

the loss would not have occurred without the illegal act, the latter was the only proximate cause of the tragedy.

In the present case, all of the evidence shows, beyond a shadow of doubt, that had it not been for the collision of the Vaughn and Choisser cars, the accident would not have occurred. It also shows, both by the complaint of the plaintiff and the evidence, that the Vaughn car entered the intersection of Lateral 16 and Avenue J without stopping, and that such act was a misdemeanor. Section 1600, Rev. Code 1928. It was also alleged and proved that the defendant Choisser at the time of the collision was driving his car without due caution and at a high, excessive, and dangerous rate of speed. This also is a misdemeanor under our law. Section 1689, Rev. Code 1928. It is obvious, therefore, that it was two concurrent illegal acts which set in motion the sequence which ultimately resulted in the injury of plaintiff. We think that the rule laid down in the Crandall and Lusitania cases, *supra,* applies to the present case, there having been two concurrent illegal acts without which the accident could not and would not have happened. But, it may be urged, these two illegal acts should have been anticipated by defendant company. We think that this is, indeed, a dangerous doctrine and one not supported by any case of which we are aware. As is well said by the Supreme Court of the United States in the case of *Atchison, T. & S. F. R. Co.* v. *Calhoun,* 213 U. S. 1, 29 Sup. Ct. 321, 323, 53 L. Ed. 671:

"But, even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that, 'if men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possi-

ble, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock, Torts, 8th ed. 41.''

And we think to require a person to anticipate even one, let alone two violations of law, which are not concurrent with his own negligence is to hold him to the standard of the ''barely possible.'' We hold, therefore, that the negligence of the defendant company in maintaining its guy wire in the condition that the plaintiff alleges that it was, was at the most a remote and not a proximate cause of his injury. Such being the case, he has no right of action against defendant company, although, on the undisputed evidence, he undoubtedly did have one against the drivers of the Vaughn and Choisser cars jointly, for their negligence was unquestioned and was concurrent in its nature..

There is no doubt that plaintiff was severely and permanently injured by the accident, and that such accident was caused by negligence to which he in no manner contributed. There is no doubt that he has a remedy therefor, but his remedy is an action against the person or persons responsible for his injury, and not against others who, as a matter of law, are not responsible. The jury has found, and we think correctly, that it was the excessive speed of the Choisser car, concurrent perhaps with the negligence of the driver of the Vaughn car in entering Avenue J without stopping, as required by law, which was the proximate cause of his injury, and his remedy is against one or both of them. He has already very properly recovered a judgment against Choisser in the sum of $8,800, but he is not entitled to an additional

judgment against a defendant which is not guilty of concurrent negligence and whose negligence, if any such existed, was merely a remote cause of plaintiff's injury.

The judgment of the superior court is reversed and the case remanded with instructions to render judgment for defendant company.

McALISTER, C. J., and ROSS, J., concur.