234 F.2d 81
 P. W. SIEBRAND & Hiko Siebrand, doing business as Siebrand
Bros., Circus and Carnival, Appellants,
v.
George F. GOSSNELL and Estella Gossnell, Appellees.
S. J. CARROLL, Appellant,
v.
George F. GOSSNELL and Estella Gossnell, Appellees.
 No. 14468.
 United States Court of Appeals Ninth Circuit.
 May 23, 1956.
 
 1
 W. Francis Wilson, Kent A. Blake, Richard F. Harless, Phoenix, Ariz., for appellants Siebrand.
 
 
 2
 Howard W. Gibbons, Phoenix, Ariz., for appellant Carroll.
 
 
 3
 William P. Mahoney, Jr., Joseph C. Raineri, Daniel F. Cracchiolo, Deputy County Atty., Phoenix, Ariz., for appellees.
 
 
 4
 Before ORR and LEMMON, Circuit Judges, and JAMES M. CARTER, District Judge.
 
 
 5
 JAMES M. CARTER, District Judge.
 
 
 6
 This case arises under the diversity jurisdiction of the district court, and presents various problems in the law of negligence, including particularly the effect of the return of separate verdicts against certain defendants and alleged apportionment of a verdict between such defendants.
 
 
 7
 Appellees George F. Gossnell and Estella Gossnell, husband and wife, and hereinafter called the Gossnells, were travelling by automobile on the highway near Tempe, Arizona, on February 20, 1953. A truck operated by appellant Carroll, and belonging to appellants, P. W. Siebrand and Hiko Siebrand, hereafter called Seibrand Bros., was travelling in an opposite direction. As the parties approached each other, a trailer being pulled by the truck became disconnected, crossed the highway, and ran head-on into the Gossnell car, causing damage thereto and personal injuries to the Gossnells.
 
 
 8
 The Gossnells, citizens of Iowa, brought action in the district court against Seibrand Bros. and Carroll, citizens of Arizona. Seibrand Bros., and Carroll filed separate answers and were represented by different counsel. The case was tried to a jury. Separate verdicts were asked for by Siebrand Bros., and without objection were given to the jury. The jury returned a verdict against Carroll for $100 and against Siebrand Bros. for $95,000. The verdicts were entered without objection.
 
 
 9
 Thereafter, Siebrand Bros. moved for a new trial and moved 'to strike from the verdict' against them, all sums in excess of $100, Carroll claimed tender of the $100 to Gossnells and their refusal to accept it and tender to the clerk, and moved that the judgment against him be satisfied. The trial court denied all three motions. Within time this appeal was taken by appellants on a joint record. Separate briefs were filed.
 
 
 10
 The Carroll Appeal.
 
 
 11
 Carroll appealed only from the order denying his motion to satisfy the judgment for $100 against him. He did not appeal from the judgment entered on the verdict. Sec. 1291, U.S.C.A., Title 28 provides this court 'shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * *'. The 7th Circuit, in Hatzenbuhler v. Talbot, 7 Cir., 1942, 132 F.2d 192, has held that an order denying a motion to satisfy a judgment is not a final decision of the district court and not appealable. Lillie v. Dennert, 6 Cir., 1916, 232 F. 104, held that such an order was appealable. In Hatzenbuhler the judgment was not appealed from and apparently had become final before the motion to satisfy was made. In Lillie it is clear that the judgment had become final before the motion to satisfy. In our case the judgment of the district court was not final and was in fact appealable when the order in question was made. Our case differs therefore from each of the above cases. Clearly, here the order on the motion was not a final order. Further motions might have been made, acted on and still the entire record would have come up on appeal. The statute, § 1291, U.S.C.A., Title 28, is based on the logic that there should not be piecemeal appeals and that on an appeal from a final judgment, the earlier rulings, though not appealable in themselves, may be reviewed. The order in question is not a final order and the Carroll appeal is dismissed.
 
 
 12
 The Siebrand Bros. Appeal.
 
 
 13
 Siebrand Bros. present nine contentions by their appeal, viz.:
 
 
 14
 1. The doctrine of res ipsa loquitur does not apply;
 
 
 15
 2. The master-servant relationship, between Siebrands and Carroll was not proved;
 
 
 16
 3. The amount recovered as actual or compensatory damages against a servant is the limit of recovery against the master where the liability of the master is derivative;
 
 
 17
 4. The amount of damages to be assessed against two joint tortfeasors cannot be apportioned, but must be in the same amounts for all such tortfeasors;
 
 
 18
 5. The verdict was excessive;
 
 
 19
 6. The admission of incompetent and immaterial evidence constituted reversible error;
 
 
 20
 7. A statement by a member of the partnership, not acting for the firm on the occasion in question, is not admissible to bind the partnership or other partners;
 
 
 21
 8. The sharing of losses as well as profits is necessary to constitute a joint venture;
 
 
 22
 9. The Carroll judgment was or should have been satisfied and therefore the Siebrand judgment was satisfied.
 
 1.
 
 23
 Res Ipsa Loquitur.
 
 
 24
 Seibrand Bros. contend that the doctrine of res ipsa loquitur was improperly applied in this case and rely on Stewart v. Crystal Coca-Cola Bottling Co., 1937, 50 Ariz. 60, 68 P.2d 952 and Sawyer v. People's Freight Lines Inc., 1933, 42 Ariz. 145, 22 P.2d 1080. Neither are controlling. The first concerned a breaking bottle, previously placed by plaintiff in an ice box; and the second concerned a collision between a horse upon which plaintiff was riding and a truck of the defendant. Both rest on the principle that the doctrine does not apply when the accident could have happened from various causes, some of which were unrelated to defendant's conduct.[1]
 
 
 25
 Here the cause of the accident was clear. The trailer became disconnected and crossed into the path of Gossnells' car. The causation was clear and a duty rested on defendants to explain the happening.
 
 
 26
 The rule of res ipsa loquitur is one of general application. This Circuit, in United States v. Johnson, 1950, 181 F.2d 577, 582, quoted the standards for application of the rule as set out by Wigmore.
 
 
 27
 '* * * '(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. It may be added that the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' (Wigmore on Evidence, Third Ed., Sec. 2509.) * * *.'
 
 
 28
 United States v. Hull, 1 Cir., 1952, 195 F.2d 64, at page 66, states:
 
 
 29
 '* * * The use of the Latin phrase 'res ipsa loquitur' in this connection may be unfortunate, as suggesting that some exotic doctrine is involved. It is nothing more than a case of circumstantial evidence, where plaintiff has proved enough 'to get to the jury', and where the inference of negligence, though not necessarily a required one, is a permissible one on the balance of probabilities. See Prosser on Torts § 43 (1941); Sweeney v. Erving, 1913, 228 U.S. 233, 238-240, 33 S.Ct. 416, 57 L.Ed. 815. * * *'
 
 
 30
 Stewart v. Crystal Coca-Cola Bottling Co., supra (50 Ariz. 60, 68 P.2d 954), shows Arizona's view of the elements of res ipsa loquitur. 'This rule is merely one of evidence and is applicable only when the instrumentality causing the injury is under the control of the defendant and the accident is of such a character that in the ordinary course of events would not happen if those having control of it used due care. * * *' The plaintiff is not 'excused from proving negligence * * * the purpose of the rule * * * is to aid the plaintiff in a proper case in making this showing by supplying a sufficient proof of negligence to require a defendant claiming that the accident did not occur through any fault of his to produce evidence to show this * * *'. 68 P.2d at page 954. 'It is only where the existence of negligence is a more reasonable deduction from the facts shown that a plaintiff is permitted to call this rule to his aid.' 68 P.2d at page 956.
 
 
 31
 These statements square with Wigmore, and the quote for United States v. Hull, supra, and indicate that Arizona follows the general principles used by other jurisdictions in the application of the doctrine. We conclude that this case was a routine one for the application of res ipsa loquitur, and we find no error in this respect.
 
 
 32
 2, 3, 4.
 
 
 33
 Master and Servant; Joint Tortfeasors; Apportionment of Damages.
 
 
 34
 Probably the most important and troublesome problem in the case arises from the verdicts returned by the jury. The trial court submitted to the jury two pairs of verdicts, in the first pair, one for plaintiffs against Siebrand Bros., in a blank amount, and one for Seibrand Bros., against plaintiffs; and in the second pair, one for plaintiffs against Carroll in a blank amount, and one for Carroll against plaintiffs. It was conceded on argument before this court that Siebrand Bros., requested the separate verdicts. In the instructions to the jury, the court called attention to the two sets of verdicts, one as to Siebrand Bros., and one as to Carroll. Neither side objected, as required by Rule 51, Fed.Rules Civ.Proc. 28 U.S.C.A., to the instruction concerning verdicts. The jury returned one verdict for plaintiffs against Siebrand Bros. for $95,000 and one against Carroll for $100. The verdicts were received, recorded and the jury discharged. Objection was first raised by motion thereafter in the trial court.
 
 
 35
 Siebrand Bros. now make two general contentions:
 
 
 36
 (1) Assuming arguendo, that Carroll was Seibrand Bros.' servant, that Siebrand Bros.' liability is the derivative liability of a master for the acts of a servant and the amount recovered as actual or compensatory damage against the servant is the limit of the amount which can be recovered against the master, Siebrand Bros. They would thereby limit their liability to $100.
 
 
 37
 (2) That Siebrand Bros. and Carroll are in any event joint tortfeasors and that the amount of damages to be assessed against joint tortfeasors cannot be apportioned but must be assessed in like amounts.
 
 
 38
 Gossnells concede the rule as to the limitations on the master's derivative liability, but contend the master was here guilty of independent negligence in maintaining the equipment, pointing to the evidence hereafter discussed, and to the complaint which alleged,
 
 
 39
 'On February 20th, 1953, while plaintiffs were proceeding in their automobile in a northerly direction on the Tempe Bridge, just north of the business district of Tempe, Arizona, defendants so negligently, carelessly and wantonly maintained and operated their motor vehicle and a heavily loaded trailer attached thereto as to cause said trailer to become disconnected and to run into the automobile of plaintiffs with great force and violence.'
 
 
 40
 Gossnells contend that two delicts or wrongs are thus alleged and that the verdict against Carroll can be sustained under the allegation of negligent operation and the verdict against Siebrand Bros., under the allegation of negligent maintenance.
 
 
 41
 Gossnells contend that the defendants are not joint tortfeasors under Arizona law, and their liability is several and therefore the verdicts are proper.
 
 
 42
 This Court is 'required to seek the support of the judgment appealed from upon any ground disclosed in the record. Le Tulle v. Scofield, 308 U.S. 415-421, 60 S.Ct. 313, 84 L.Ed. 355 and cases cited.' Town of South Tucson v. Tucson Gas Electric Light & Power Co., 9 Cir., 1945, 149 F.2d 847, 848. We must take 'that view of the evidence which is most favorable to the prevailing party, accepting as established all facts which the evidence reasonably tended to prove and giving to the prevailing party the benefit of all inferences which may be reasonably drawn from the evidence. Oxhard Canners, Inc., v. Bradley, 9 Cir., 194 F.2d 655; Ross v. British Yukon Nav. Co., 9 Cir., 188 F.2d 779.' Bank of America National Trust and Savings Ass'n v. Hayden, 9 Cir., 1956, 231 F.2d 595, 603. In the case at bar there were alternate theories of liability as to Carroll and the Siebrand Bros. This is no different than a case where there were alternate theories of damages. In Bank of America National Trust and Savings Ass'n v. Hayden, supra, the court said at page 602, 'Consequently the verdict is to be construed as responsive to any and all material issues in the case, including the alternate theories of damages.' citing cases. See International Longshoremen's & Warehousemen's Union C.I.O. v. Hawaiian Pineapple Co., 9 Cir., 1955, 226 F.2d 875, where on trial before a jury, the verdict was rendered against the International and Local Union but in favor of the individual defendants and against the plaintiff. The court said, page 882:
 
 
 43
 '* * * The presumption is that (the jury) * * * did its duty. And especially is this true where there were combinations of permissible findings that were not inconsistent. But if plain inconsistent, that was the jury's prerogative here. See Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Jayne v. Mason & Dixon Lines, 2 Cir., 124 F.2d 317. If the master and servant cases cited by International and Local were applicable, the short answer would be: Possible combinations of facts existed which would make the verdicts consistent within themselves. * * *'
 
 
 44
 (1) The Master's Derivative Liability.
 
 
 45
 35 Am.Jur.Supp. § 591, p. 72, states: 'The rule is established in most jurisdictions in which the question has arisen that the amount recovered as actual or compensatory damages in a tort action against a servant who was the active tortfeasor, is the limit of the amount recoverable as damages against the master whose responsibility is solely derivative * * *'. This is the general rule,'[2] and in this diversity case we find Arizona law to be in accord. DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342. If this was all there was to this case, it would be a 'short horse, soon curried.'
 
 
 46
 (2) Independent Liability of Master.
 
 
 47
 But in DeGraff v. Smith, supra, the court, after quoting from Inter State Motor Freight System v. Henry, 111 Ind.App. 179, 38 N.E.2d 909, 912, as follows:
 
 
 48
 "Nor does the verdict in favor of a joined servant bar a recovery against the master where the latter has himself been guilty of acts on which independently of the acts of the servant, liability may be predicated", concluded,
 
 
 49
 'There is no evidence in the case that the defendant DeGraff was guilty of an act of negligence on which, independently of the acts of the servant, liability may be predicated.' 157 P.2d at page 344.
 
 
 50
 If under the facts of our case, there is independent negligence on the part of the master, Siebrand Bros., then under Arizona law, there may be liability of the master, apart from his derivative liability for the servant's wrongful acts.
 
 
 51
 We test Gossnells' claim of two wrongs by the evidence in the case, viewed in the light most favorable to them as prevailing parties.
 
 
 52
 (3) The Operation of the Vehicle.
 
 
 53
 Carroll was the driver of the truck, pulling the trailer, at the time of the accident. There was available to the plaintiffs the application of the rule of res ipsa loquitur. There was clear support in the record for the jury's verdict against Carroll for negligent operation of the vehicles.
 
 
 54
 (4) Maintenance of the Equipment.
 
 
 55
 It is only when the master is himself free of negligence and his liability is solely derivative from the negligence of the servant, that the amount recovered from the servant is the limit of the recovery against the master, (supra). Here, in addition to evidence to support a finding that Carroll was an agent of Siebrand Bros., there was also evidence of their own negligence in maintaining the equipment.
 
 
 56
 Carroll was driving Siebrand Bros.' pick-up. Proof of ownership of the car was prima facie evidence that the driver Carroll, was the servant or agent of Siebrand Bros., and using the vehicle in the business of the owner. A rebuttable presumption arose from such proof. The burden was on Siebrand Bros. to overcome this prima facie showing. Baker v. Maseeh, 1919, 20 Ariz. 201, 179 P. 53; Hatchimonji v. Homes, 1931, 38 Ariz. 535, 3 P.2d 271; See, Lutfy v. Lockhart, 37 Ariz. 488, 295 P. 975; Peters v. Pima Mercantile Co., 1933, 42 Ariz. 454, 27 P.2d 143.[3]
 
 
 57
 There were conflicts in the evidence and the jury was instructed that if a witness testified falsely as to any material matter, they might reject his entire testimony, and that they were the sole judges of the credibility of the witness.
 
 
 58
 Mrs. Gossnell testified that defendant, P. W. Siebrand, introduced Carroll as 'the man who was driving the truck for us.' All defendants denied Carroll was employed by Siebrand Bros., but said he was only a concessionnaire. The jury obviously disbelieved the defendants. Plaintiffs' prima facie showing was not overcome.
 
 
 59
 Siebrand Bros. operated a circus and owned the truck involved in the accident. They testified that Bill Siebrand, a nephew and the owner of the trailer, was an independent concessionnaire and had no other connection with the circus. They admitted that they owned 'riders' and other equipment connected with the circus. Bill Siebrand also testified he and Carroll were concessionnaires and were going to operate a bird show. He testified he owned the trailer and saw it the night before the accident and that it contained only bird cages and a mirror; that he asked Carroll to move the trailer on the day in question to Mesa and that on arrival the trailer contained the same material. Bill Siebrand admitted he had been working for his uncle up to the day before the accident.
 
 
 60
 Carroll testified Bill Siebrand asked him to drive Bill Siebrand's truck and trailer to Mesa on the day in question but that he became confused and took Siebrand Bros. red truck instead of Bill Siebrand's red truck; and that the trailer contained bird cages and no 'rides' whatever. However, Boyd, a policeman who was immediately following Siebrand Bros.' pick-up and the trailer at the time of the accident, looked inside the trailer and there observed carnival or circus 'rides.' All defendants and Bill Siebrand denied this. The jury could have and apparently did believe Boyd and disbelieved the defendants and Bill Siebrand. Thus the jury could infer that Bill Siebrand's trailer was hauling circus rides for Siebrand Bros. Nor was the jury required to believe Carroll or Bill Siebrand to the effect that the Siebrand Bros.' truck was used by mistake nor to believe that Carroll was not an employee of Siebrand Bros. Although the defendants Siebrand and Bill Siebrand denied the existence of a joint venture, they were obviously not believed by the jury. In any event, the jury were instructed on the theory of joint venture and by their verdict found that Bill Siebrand was part of a joint venture with the Siebrand Bros., his uncles. The finding of a joint venture places both the pick-up and the trailer under the control and management of Siebrand Bros. They had a duty to maintain it with due care.
 
 
 61
 There was sufficient evidence from which the jury could have concluded that the pick-up and trailer, and particularly the hitch used to join them, were not maintained with due care at the time of the accident. A hitch similar to that claimed to have been on the trailer was in evidence before the jury and was viewed by this court. It had various movable parts.
 
 
 62
 Boyd, who examined the hitch immediately after the accident, testified the lock for the ball hitch was missing but that nothing was broken. The record is not clear, but various aspects of the hitch were pointed out to the jury and Boyd insisted a part was missing. A search by Boyd and Carroll resulted in finding nothing that had dropped off along the highway. Although Carroll claimed the hitch was complete and hooked properly when he connected the trailer to the truck, for the reasons above, the jury did not have to believe him.
 
 
 63
 On these facts there was ample basis for the jury to conclude that a part was missing from the hitch. The jury could have concluded that the Siebrand Bros. permitted the equipment to be operated on the highway and did not properly maintain the equipment at the time of the happening of the accident, in assessing damages on this tort at $95,000.
 
 
 64
 Thus the jury was justified in fixing the damages for the tort of negligent operation at $100 and the damages for the separate tort of negligent maintenance at $95,000.
 
 
 65
 (5) Siebrand Bros. and Carroll Were Not Joint Tortfeasors Under Arizona Law.
 
 
 66
 Siebrand Bros. contend that in any event they and Carroll were joint tortfeasors, and that damages may not be apportioned, but must be in the same amount against all joint tortfeasors.
 
 
 67
 Professor Prosser, in The Law of Torts (1941) clarifies our problem and sets forth three situations to which the terms 'joint tort' or 'joint tortfeasor' have been applied.
 
 
 68
 (1) Concert of action-- Vicarious liability.
 
 
 69
 'The original meaning of 'joint tort' was that of vicarious liability for concerted action. All persons who acted in concert to commit a trespass, in pursuance of a common design, were held liable for the entire result * * * all might be joined as defendants in the same action at law and since each was liable for all, the jury would not be permitted to apportion the damages.' (page 1094).
 
 
 70
 (2) Joinder of causes of action.
 
 
 71
 'A second meaning of a 'joint tort' is that two or more persons may be joined as defendants in the same action at law.' (page 1096).
 
 
 72
 (3) Concurrent or successive wrongdoers.
 
 
 73
 'Quite apart from any question of vicarious liability or joinder of defendant, the common law developed a separate principle, that a tortfeasor might be liable for the entire loss sustained by the plaintiff, even though his act concurred or combined with that of another wrongdoer to produce the result.' * * * (page 1102).
 
 
 74
 'In England such concurrent but independent wrongdoers have not been confused with joint tortfeasors because there could be no joinder in the absence of concerted action. They mast be sued separately and although each may be liable for the entire loss, the juries are under no compulsion to return verdicts for the same amount. Under the more liberal American rules as to joinder, defendants whose negligence has concurred to produce a single result have been joined in one action, and by careless usage have been called joint tortfeasors.' (pages 1102-3).[4]
 
 
 75
 But in this diversity case we look particularly to Arizona law. '* * * for purposes of diversity jurisdiction a federal court is, 'in effect, only another court of the State * * *. " Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1416, 89 L.Ed. 2079; Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524.
 
 
 76
 Arizona has laid down its own rule as to what constitutes joint tortfeasors. White v. Arizona Eastern R. Co., 1924, 26 Ariz. 590, 229 P. 101, follows the original meaning of 'joint tort' and requires concert of action in its historical sense. It is not sufficient to constitute a joint tort or joint tortfeasors, that two concurrent causes or that a concurrent cause and a concurrent condition be operative, Salt River Valley Water Users' Ass'n v. Cornum, 1937, 49 Ariz. 1, 63 P.2d 639. "'There must be concurrent action, a co-operation or concert in the accomplishment by the wrongdoers of the particular wrong in order to make them jointly liable. If each person acts independently of the other the fact that they acted simultaneously is not sufficient to establish joint liability."' 63 P.2d at page 643.[5]
 
 
 77
 Under the facts of our case there was not the necessary concert of action between the negligence in maintenance attributable to Siebrand Bros. and the negligence in operation attributable to Carroll to constitute them joint tortfeasors under Arizona law.5A
 
 
 78
 The Arizona cases stand for a second proposition. If there is not joint liability on the part of two or more persons, they may not be joined as codefendants in one action. But here we are not bound by Arizona law. The F.R.C.P. provide expressly as to when joinder is permitted.
 
 
 79
 '* * * All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. * * *' Rule 20, F.R.C.P.
 
 
 80
 Assuming then that Siebrand Bros. and Carroll were not joint tortfeasors under Arizona law they were still properly joined as defendants in this diversity action in a federal court.
 
 
 81
 Since under Arizona law there was not a joint tort but separate acts of negligence on the part of Siebrand Bros. and Carroll, the fact that the jury fixed damages in different amounts does not become fatal to the action.
 
 
 82
 In conclusion, we think the record here can be fairly read to show that the case was tried in the trial court on the theory of the two separate wrongs. The complaint alleged generally negligent maintenance and operation. Instructions were requested and given on both the theory of, (1) liability for negligent operation and (2) of negligent maintenance and joint adventure. Separate verdicts were requested by Siebrand Bros. without objection by plaintiffs. Attorneys on both sides were experienced members of the Arizona bar. The trial judge was formerly a state court judge in Arizona. We conclude that they were familiar with Arizona law as to joint-tortfeasors and the separate liability of those who were not joint-tortfeasors, and tried the case accordingly.
 
 
 83
 (6) Apportionment of Damages by Verdict.
 
 
 84
 Even if Siebrand Bros., and Carroll, under Arizona law, were joint-tortfeasors there would be no error of which Siebrand Bros. can complain relating to the apportionment of the verdict.[6] A line of cases in the Federal courts dispose of what is left of the problem.
 
 
 85
 Hooks v. Vet, 5 Cir., 1911, 192 F. 314, holds that, assuming error in apportioning damages, the defendant on appeal cannot complain since without the error he might have been liable for the total amount of damages before apportionment. In Ohio Valley Bank v. Greenebaum Sons Bank & Trust Co., 4 Cir., 1926, 11 F.2d 87, 90, Judge Parker disregarded the error as harmless and said, 'As a result of the apportionment each has been subjected to a smaller judgment than would have been entered against him if a joint verdict had been returned.'
 
 
 86
 In each of these cases, like the case at bar, there had been no attempt by the jury to fix a total sum and then apportion it. The jury had only fixed different amounts for different defendants. In accord, Browder v. Cook, D.C.Idaho 1945, 59 F.Supp. 675; See also Freid v. McGrath, 1943, 77 U.S.App.D.C. 385, 135 F.2d 833; Grober v. Capital Transit Co., D.C.D.C.1954, 119 F.Supp. 100.
 
 
 87
 In Dextone Co. v. Building Trades Council, etc., 2 Cir., 1932, 60 F.2d 47, Judge Swan, speaking for a unanimous court, went even further. There, in a treble damage action based on conspiracy, the trial court had instructed the jury that the Westchester group of defendants were not liable for all the damages, but only for that portion occurring after they joined the conspiracy. The jury fixed the damages as to the original group at $11,000 and the Westchester group at $2,000. Judgment was entered accordingly.
 
 
 88
 On appeal Judge Swan said that since the jury had found plaintiff's loss to be $11,000 and had found all defendants guilty of the conspiracy, the apportionment should be ignored as surplusage and 'judgment should have been entered for the full amount against all the wrongdoers. Such a defect in the verdict may be cured either by the trial court, or by the appellate court without the granting of a new trial.' 60 F.2d at page 49. The appellate court held that judgment against all defendants should be in amount equal to three times the $11,000 figure plus attorney's fees.
 
 
 89
 In Detroit City Gas Co. v. Syme, 6 Cir., 1940, 109 F.2d 366, 368, the verdict was that defendants were negligent and "liable to the plaintiff in the sum of $10,000 (or $5,000 each)." Judgment was entered for $10,000 against each defendant. The court of appeals held the judgment must respond to the verdict, and that upon this question, the court was bound to follow state law. A Michigan case, squarely in point, held that such a judgment on such verdicts was improper. The Sixth Circuit reversed, but the court said 'Had the judgment responded to the verdict, the defendants would have had no right on this score to complain, though plaintiff might have appealed * * *'. At page 369.
 
 
 90
 Since our judgment did respond exactly to the verdicts and no Arizona cases can be found, we follow the Hooks and Ohio Valley Bank cases, supra, and find that the verdicts and the judgments entered thereon were proper and that the error, if any, in the apportionment of damages is not error of which Siebrand Bros. can complain.
 
 5.
 
 91
 The Alleged Excessive Verdict.
 
 
 92
 Siebrand Bros. attack the $95,000 judgment against them as excessive. We are required to consider the evidence in the light most favorable to Gosnells. Mr. Gossnell was about 64 at the time of the accident and had a life expectancy of eleven years and ten months. He earned $7,000 a year. Mrs. Gosnell was also employed. Although the injuries the Mrs. Gossnell were not severe, consisting of broken ribs, the contrary is true as to Mr. Gosnell's injury. He suffered severe lacerations, broken ribs, a shattered knee, a compound comminuted fracture of the femur with breaks in ten different places with fractures into the knee joint, a fracture of the fibula, a deep three-inch laceration over the eye and a skull fracture resulting in impaired memory. He was in the hospital in Arizona until April 1953, was returned home to Iowa in a cast and continued in one until an open reduction was performed on his leg in May 1953, and a brace placed thereon. October 25th, the brace was removed and two days later, the broken leg bent or 'doubled up' and he was put back in a cast.
 
 
 93
 He was still bed-ridden and in a body cast at the time of trial 14 months after the accident, and there was not complete healing or a solid union of the femur. There was testimony that permanent disabilities would result; another year or year and a half would elapse before he was up and around and back to activity. Medical expense, nursing and related expenses came to $12,027 by date of trial. Loss of wages to that time exceeded $8,800. There was evidence that extensive further surgical and medical attention were necessary.
 
 
 94
 The trial court considered Siebrand Bros.' contention on motion for new trial and denied the motion. The action of the trial judge on such a motion for new trial 'is not limited to questions of law', but he may 'grant a new trial when he is of opinion the verdict is against the weight of evidence * * *.' Southern Pacific Co. v. Guthrie, 9 Cir., 1951, 186 F.2d 926, 932; Bradley Mining Co. v. Boice, 9 Cir., 1951, 194 F.2d 80, 83.
 
 
 95
 But the power of the Court of Appeals is not as broad as that of the trial court. Absent a total want of evidence on all or certain portions of the case, or the erroneous exclusion from consideration by the trial court of appropriate matters or a showing of bias or prejudice on the part of the jury, this court may not reverse the trial court unless the verdict can be said to be grossly excessive or monstrous, Southern Pacific Co. v. Guthrie, supra, 186 F.2d at page 933.[7] None of such elements are presentThe verdict was for two injured plaintiffs and a demolished car and was based on evidence showing substantial injury to one and serious and permanent injury to the other, with in excess of $20,800 special damage to trial date and additional medical and surgical care to be necessitated in the future. The trial court passed on the question on the motion for new trial and we cannot say that the verdict is so grossly excessive as to show an abuse of discretion on its part. Northern Pacific Railway Co. v. Everett, 9 Cir., 1956, 232 F.2d 488.
 
 
 96
 Siebrand Bros. complain that Mr. Gossnell had received commissions from his employer during the first year after the accident. Gossnell did not know how long these payments would continue. But payments to an injured party by an employer, 15 Amer.Jur.Sec. 200, or insurance carrier, 15 Amer.Jur.Sec. 201, or resulting from contract, do not decrease the liability of the wrongdoer, 18 A.L.R. 678; 95 A.L.R. 575. This is the majority rule. No Arizona cases have been cited or found. We believe that rule correct.
 
 
 97
 6-7.
 
 
 98
 Claimed Errors in Admission of Testimony.
 
 
 99
 Siebrand Bros. claim error in the admission of testimony.
 
 
 100
 (a) Safety chains. Evidence that there was no safety chain between the truck and trailer was admitted. No statute was found requiring safety chains, but Officer Boyd testified without objection, that such was the law and that he had given Carroll, the driver, a ticket for unsafe equipment. An Arizona statute requires any trailer moving on a highway to have equipment 'in good working order and adjustment' * * * and to be in such 'safe mechanical condition as not to endanger * * * any person upon the highway.' Sec. 66-183, Ariz.Code of 1952, Cum.Supp. (A.R.S. § 28-981).
 
 
 101
 Prior to the objected testimony, other testimony showing a lack of safety chains had been offered by Gossnells and received without objection, and the witness had been cross-examined on the subject. Obviously, it was not error to later overrule an objection to similar testimony, 3 Amer.Jur.Sec. 872, p. 417. It also was proper to completely describe the condition of the truck and trailer, whether a statute on safety chains existed or not.
 
 
 102
 (b) The Clark deposition. This deposition was first read into evidence. Then Gossnells offered it in evidence. Carroll objected and moved to strike the testimony. Siebrand Bros. joined in Carroll's objection but did not move to strike the testimony. The court commented it was 'already in the record.'
 
 
 103
 The testimony of Clark concerned a conversation with P. W. Siebrand, one of the defendants, occurring a few days after the accident in which P. W. Siebrand told Clark 'He was sorry about the accident, he was going to stand all damages' and would buy Gossnells 'a new car.'
 
 
 104
 Previously Mrs. Gossnell had testified on direct to a similar conversation of similar import with P. W. Siebrand without objection, and had been extensively cross-examined on the matter. There was no error.
 
 
 105
 (c) Mrs. Gossnell, in connection with her testimony, referred to above, was asked by her attorney, 'Who is Mr. Carroll?' She answered, 'Mr. Siebrand introduced him as the man who was driving the truck for him that day and he brought him over to meet us.'
 
 
 106
 Siebrand Bros. counsel then objected on the ground the answer was not responsive and moved it be stricken 'as prejudicial to this defendant.' Literally this meant P. W. Siebrand. On appeal it is argued the testimony was prejudicial to the other brother, Hiko Siebrand, because he was not present.
 
 
 107
 The testimony was admissible as to P. W. Siebrand as an admission against interest. Counsel limited his objection to one on behalf of P. W. Siebrand. Nor does the objection 'prejudicial' assist the trial court in any way.
 
 
 108
 Since the testimony was admissible against P. W. Siebrand, all that defendant's counsel could have done was to ask its application be limited to P. W. Siebrand only. A motion to strike was properly denied.[8]
 
 8.
 
 109
 Joint Adventure.
 
 
 110
 Siebrand Bros. object to certain instructions given and refused. Specifications of error 10, 11 and 12 concern Siebrand Bros.' requested instructions on joint adventure, which were refused. No objections were made to refusal to give any instruction. Under Rule 51, F.R.C.P., Siebrand Bros. have waived any error as to refused instructions and cannot now complain.8A The instruction referred to in specification number 14 was withdrawn by Siebrand Bros.
 
 
 111
 The gist of the objection to the remaining instructions in these specifications of error is that the instructions on joint adventure and joint enterprise were 'lacking in the total essential elements to constitute an instruction in connection with the same and particularly * * * the failure to state that it is necessary, to constitute a joint enterprise or joint adventure that the parties must have entered into the same knowingly and voluntarily and that they must have been liable for participation in the losses of the joint enterprise or joint adventure;' and that Gossnells' instruction No. 5, relating to joint venture, is 'not supported by critical evidence' and that Gossnells' No. 8 also relating to joint venture, 'is not a correct statement of the law.'
 
 
 112
 The court, however, covered the matter of intent and told the jury they must find that Siebrand Bros. and William Siebrand 'intended and did join their efforts in furthering of the circus * * * for their joint profit' before the jury could find them to be joint adventurers.
 
 
 113
 Siebrand Bros. rely on Gottlieb Bros., Inc., v. Culbertson's, 1929, 152 Wash. 205, 277 P. 447 for the claimed rule that the sharing of losses is an essential element of a joint adventure. But this circuit in Eagle Star Ins. Co. v. Bean, 9 Cir., 1943, 134 F.2d 755, 757, has stated that in view of Carboneau v. Peterson, 1 Wash.2d 347, 374, 95 P.2d 1043, 1054, 'it is no longer the law of Washington that there is no joint adventure unless the parties agree, expressly or impliedly, to share the losses, as indicated in * * * Gottlieb Bros., Inc. v. Culbertson (supra) * * *'.[9]
 
 
 114
 The trial court instructed on the necessity of sharing in the profits and on the elements of a joint adventure. There was substantial evidence upon which to base such instructions.
 
 
 115
 We have inspected the instructions to which objections were made, Rule 51, F.R.C.P., and find them not erroneous.
 
 9.
 
 116
 The Effect of the Carroll Judgment on the Siebrand Judgment.
 
 
 117
 Siebrand Bros.' notice of appeal, was in part from the order denying Carroll's motion to satisfy the judgment. Out disposition of Carroll's appeal disposes of this contention. But Siebrand Bros.' notice of appeal was also from the final judgment against them. The correctness of the trial court's ruling is thus raised. Siebrand Bros. claim (1) the judgment against Carroll was in fact paid on a tender to Gossnells and to the clerk of the district court, and (2) that such payment satisfies the Siebrand judgment.
 
 
 118
 Carroll's motion was not supported by affidavit or testimony. The motion recites, '* * * Carroll has heretofore tendered to the plaintiffs the amount of such judgment which was refused and has presently tendered said amount to the clerk * * *.' There is no record to support the fact of tender except the unverified motion itself. Thus the motion was properly denied, since it was not supported by any factual showing before the court. This alone is sufficient to dispose of this phase of the case.
 
 
 119
 However, the question may arise hereafter with Carroll or Siebrand Bros. attempting to satisfy the Carroll judgment and thereafter claiming that all liability of Siebrand Bros. is thereby also terminated. We do not think this result follows. First, as stated above, the defendants under Arizona law, were not joint tortfeasors and a proper judgment was therefore entered against each of them. Each should therefore satisfy the judgment against him.
 
 
 120
 Second, we cannot escape the fact that underlies this entire case, namely that the separate verdicts were brought about by the request of Siebrand Bros. It would be an intolerable situation in the administration of justice for a party litigant, by his own request, to bring about a posture of the case which would permit him to do what Siebrand Bros. now desire to do. They asked for a separate verdict and they got a separate verdict. They may not now contend that by the satisfaction of the Carroll judgment, either by Carroll or Siebrand Bros., that the judgment rendered on the Siebrand Bros.' verdict is also satisfied. We hold that the satisfaction of either of the judgments will not satisfy the other.
 
 
 121
 The Carroll appeal is dismissed. The judgment against Siebrand Bros. is affirmed.
 
 
 
 [1]
 The Stewart case, supra, 68 P.2d at page 956 in part relied on California law. See also Weddle v. Loges, 1942, 52 Cal.App.2d 115, 125 P.2d 914. Here the plaintiff was riding in the towed car which jumped the curb and collided with a tree. The plaintiff sued the driver of both the towed and towing cars. The doctrine of res ipsa loquitur was held to have been properly applied
 
 
 [2]
 141 A.L.R. 1169
 
 
 [3]
 This is the general rule. Tice v. Crowder, 119 Kan. 494, 240 P. 964, 42 A.L.R. 898; Judson v. Bee Hive Auto Service Co., 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A.L.R. 951; 96 A.L.R. 635
 
 
 [4]
 See, Joint Torts and Several Liability, William L. Prosser, 25 Cal.Law Rev. 413. Restatement of the Law of Torts, Sec. 879, Concurrent or Consecutive Independent acts. Sec. 882, Joinder of Parties
 
 
 [5]
 In Salt River Valley Water Users' Ass'n v. Cornum, supra, two automobiles, both operated negligently, collided and plaintiff in attempting to escape from the path of one of the careening cars, sought refuge behind a guy wire from a pole near the edge of the highway. A sharp projecting part of the wire caught his clothing and held him until the car hit him. The court relied upon and quoted from the White case (supra) and further pointed out that since the negligence of the defendant responsible for the protruding wire consisted of creating a passive condition 'innocuous except through and by active negligence on the part of a third person, the two are not concurrent.' 63 P.2d at page 643. Clearly, in the historical use of that term, there was not the concert of action necessary for a 'joint-tort.'
 Likewise the case of DeGraff v. Smith, supra, quotes from and relied upon the holding in the White case, supra.
 5A Siebrand Bros. cite Powell v. Langford, 1941, 58 Ariz. 281, 119 P.2d 230 and contend that White v. Arizona Eastern R. Co., supra, is not applicable. They state that in White 'the two tortfeasors acted completely independent.' In Powell a judgment for negligence against a wife, who owned a car and permitted her husband, a long time 'drunk' to operate it and cause the accident, was affirmed. Only the wife was sued. The husband died in the crash. In Arizona when a tortfeasor dies, the cause of action does not survive. McClure v. Johnson, 50 Ariz. 76, 69 P.2d 573. No question of joint tortfeasors was presented in Powell. Although the court said (58 Ariz. 281, 119 P.2d 232) 'the jury was authorized to find, as it did, that the joint negligence of defendant and John E. Powell (driver) caused the accident * * *', no cases were cited, nor any discussion had. Neither counsel cited Salt River Valley Water Users' Ass'n v. Cornum, supra.
 
 
 [6]
 As to the various solutions to the problem of apportionment, Prosser on Torts, 1941, Ch. 21, pp. 1104-05, states 'where the jury improperly returns verdicts for separate amounts against two or more defendants, various rules have been adopted. The plaintiff is permitted by some courts to take judgment against all for the higher damages, and by others to enter judgment against one defendant and dismiss his action against the others. A few courts have adopted the most reasonable solution, which is to return the case to the jury with instructions to render a single verdict. A defendant, however, usually is not permitted to complain at all, as he might have been sued severally, and the smaller verdict against another does not relieve him of his own liability as determined by the jury.' See, 30 A.L.R. 790, 'Right of jury to apportion or sever damages as between joint-tortfeasors,' supplemented in 108 A.L.R. 792; 8 A.L.R.2d 862, 'Disregard or correction by court of apportionment of verdict among joint-tortfeasors.'
 
 
 [7]
 Arizona law is generally in accord, and differentiates between a verdict influenced by passion and prejudice and one that is merely excessive, Stallcup v. Rathbun, 1953, 76 Ariz. 63, 258 P.2d 821, 823. That case, relied on by Siebrands, distinguishes Standard Oil Co. of California v. Shields, 58 Ariz. 239, 119 P.2d 116, also relied on by them. The excessive verdict must be 'flagrantly outrageous and extravagant,' Stallcup, supra, 258 P.2d 824 before the Arizona Appellate court will set it aside
 
 
 [8]
 We do not have to decide, and so save for another day the question of the admissibility of the statement after proper objection against the other partner. Generally the declaration of a partner in relation to the affairs of a firm are competent evidence against all of the members. 1 RCL 514; 73 A.L.R. 447, 449. But his admissions cannot be used against the remaining partners when they concern transactions not within the partnership business, nor to bring a transaction within the scope of partnership business, when in fact it is not, 73 A.L.R. 447, 454. The same distinction is pointed out in 40 Amer.Jur., Partnership, Sec. 443, pp. 439-440. In tort actions there is a split of authority, 73 A.L.R. 447, 455, with no Arizona cases cited. The matter is further complicated by the question of whether the problem is one of substantive law or of the law of evidence. This would be particularly important in a federal court in a diversity case because of Rule 43, F.R.C.P. and its provisions for accepting the most liberal of alternate bases for admissibility
 8A This circuit has, since 1939, so held as to civil cases. Lynch v. Oregon Lumber Co., 9 Cir., 1939, 108 F.2d 283, 286; Woodworkers Tool Works v. Byrne, 9 Cir., 1951, 191 F.2d 667, 676; and Persons v. Gerlinger Carrier Company, 9 Cir., 1955, 227 F.2d 337, where Judge Lemmon has well summarized the matter. We can find no other civil cases in point in this circuit.
 
 
 [9]
 Estrella v. Suarez, 1943, 60 Ariz. 187, 134 P.2d 167, 170, states, 'under all the authorities, sharing in the profits is necessary to create a joint adventure which is merely a 'partnership for a single transaction." The court further noted, 134 P.2d at page 170, that 'Under many authorities, sharing in losses is also required.' Citing Gottlieb Bros. Inc., supra